IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MR. CHARLES SMALLEY** ) | **CASE NO.:** _____ |
| **MS. PAMELA BALL** ) | |
| ) | |
| **On behalf of themselves and as a class,** ) | |
| ) | |
| **c/o IAN STUMPF, Esq.** ) | |
| **JR HOWELL & ASSOCIATES** ) | |
| **1325 G Street NW, Suite 500** ) | |
| **Washington D.C. 20005** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **SHAPIRO & BURSON, LLP** ) | |
| **c/o The Corporation Trust Incorporated** ) | |
| **351 West Camden Street** ) | |
| **Baltimore, MD 21201** ) | |
| ) | |
| **JOHN S. BURSON, ESQ.** ) | |
| **13135 Lee Jackson Highway, Suite 201** ) | |
| **Fairfax, Virginia 22033** ) | |
| ) | |
| **WILLIAM M. SAVAGE, ESQ.** ) | |
| **13135 Lee Jackson Highway, Suite 201** ) | |
| **Fairfax, Virginia 22033** ) | |
| ) | |
| **GREGORY N. BRITTO, ESQ.** ) | **COMPLAINT – CLASS ACTION** |
| **13135 Lee Jackson Highway, Suite 201** ) | |
| **Fairfax, Virginia 22033** ) | |
| ) | **JURY DEMAND ENDORSED HEREON.** |
| **JASON MURPHY, ESQ.** ) | |
| **13135 Lee Jackson Highway, Suite 201** ) | |
| **Fairfax, Virginia 22033** ) | |
| ) | |
| **KRISTINE D. BROWN, ESQ.** ) | |
| **13135 Lee Jackson Highway, Suite 201** ) | |
| **Fairfax, Virginia 22033** ) | |
| ) | |
| **ERIK W. YODER, ESQ.** ) | |
| **13135 Lee Jackson Highway, Suite 201** ) | |
| **Fairfax, Virginia 22033** ) | |
| **Defendants.** ) | |

## INTRODUCTION

1.  This Complaint seeks justice for thousands of Maryland homeowners who were illegally charged excessive fees throughout foreclosures conducted by all of the above-named Defendants through their use of a practice widely known as "robo-signing." Maryland's judicial foreclosure process requires that the foreclosing party prove to a Maryland Circuit Court that it owns the debt instrument and has the authority to order a foreclosure. The rules of civil procedure governing foreclosures of residential real estate require that this proof be offered by way of affidavit either from the foreclosing party or an agent representing the party. Acting in concert, Defendants John S. Burson, William M. Savage, Gregory Britto, Jason Murphy, Kristine Brown, and Erik Yoder, acting as substitute trustees, signed these affidavits, or ordered the employees of Defendant Shapiro & Burson LLP to sign them, without verifying that the statements were true. As a result of this pattern of fraudulent activity, Plaintiffs Pamela Ball, Charles Smalley, and the individuals comprising the proposed class were charged illegal fees in violation of state and federal law, as discussed below.

2.  The State's Attorney's Office for Prince George's County announced a criminal inquiry into the foreclosure practices of Shapiro & Burson LLP. *See* Exhibit A. As a part of the investigation, the prosecutor's office has received statements from a former employee of Shapiro & Burson who revealed that he was told to sign thousands of affidavits swearing that Shapiro & Burson's clients owned the mortgages that they were foreclosing upon— but, he was never actually given any evidence that these statements were true. In other instances, he was asked to sign "Lost Note Affidavits," stating that even though the mortgage notes were lost, Defendants' clients had the right to foreclose—but, he was

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

never actually given any evidence that these statements were true. Other staff members were ordered by the firm's attorneys to do the exact same thing. Thousands of Maryland homeowners lost their homes in Defendants' illegal robo-signing operation.

3. For each of the thousands of homes that were sold, each of the Defendants was compensated for legal services, remunerated with other fees, and received commissions from the sale of the properties. These fees were unlawfully assessed against each member of the class.

4. The Plaintiffs now come to this Court seeking justice.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§1331 and 1332.

6. Venue and personal jurisdiction in this District are proper because:

   a. Defendants have availed themselves of Maryland's courts many thousands of times and did so in the case of each member of the class including Plaintiffs Pamela Ball and Charles Smalley;

   b. Defendants transacted and continue to transact business within this District through the assessment of fees against homeowners whose homes are sold in foreclosures in this state and in this District; and

   c. This action concerns interests in real estate located within this state and this District.

## THE PARTIES

7. Defendant Shapiro & Burson LLP is a Virginia limited liability partnership that has conducted thousands of foreclosures in the state of Maryland.

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

Case 8:11-cv-00906-JFM   Document 1   Filed 04/07/11   Page 4 of 27

8. Defendants John S. Burson, William M. Savage, Gregory Britto, Jason Murphy, Kristine Brown, and Erik Yoder (collectively the "Substitute Trustee Defendants") have been appointed by several financial institutions to conduct thousands of foreclosure sales in the state of Maryland. These individuals were appointed as "substitute trustees" to conduct the foreclosures at issue in this lawsuit.

## STATEMENT OF FACTS

### A. The Story of Pamela Ball

9. On November 30, 2006, Plaintiff Pamela Ball purchased the property located at 12734 Gladys Retreat Circle, Unit 68, Bowie, MD 20720.

10. Ms. Ball purchased the property with an adjustable rate mortgage with a beginning balance of $355,700.00.

11. Not long after purchasing the property, Ms. Ball began experiencing financial difficulty and had trouble making her mortgage payments to her loan servicer.

12. In November of 2007, the Substitute Trustee Defendants commenced a foreclosure of Ms. Ball's property by filing an Order to Docket with the Circuit Court for Prince George's County. Under Maryland law, an Order to Docket was required to be accompanied by a number of affidavits. Under the Maryland Rules of Civil Procedure in effect at the time under Rule 14-207(b), these items included the following:

   a. a copy of the lien instrument supported by an affidavit that it is a true and accurate copy, or, in an action to foreclose a statutory lien, a copy of a notice of the existence of the lien supported by an affidavit that it is a true and accurate copy;

   b. an affidavit by the secured party, the plaintiff [the Substitute Trustee Defendants], or the agent or attorney of either that the plaintiff has the right to foreclose and a statement of the debt remaining due and payable;

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

    c.  a copy of any separate note or other debt instrument supported by an affidavit that it is a true and accurate copy and certifying ownership of the debt instrument;

    d.  a copy of any assignment of the lien instrument for purposes of foreclosure or deed of appointment of a substitute trustee supported by an affidavit that it is a true and accurate copy of the assignment or deed of appointment;

    e.  an affidavit with respect to any defendant who is an individual that the individual is not in the military service of the United States as defined in the Servicemembers Civil Relief Act, 50 U.S.C. app. §§ 501 et seq., or that the action is authorized by the Act;

    f.  a statement as to whether or not the property is residential property; and

    g.  in an action to foreclose a lien instrument on residential property, to the extent not produced in response to subsections (b)(1) through (b)(5) of this Rule, the information and papers required by Code, Real Property Article, § 7-105.1 (d), except that if the name and license number of the mortgage originator and mortgage lender is not required in the notice of intent to foreclose, the information is not required in the order to docket or complaint to foreclose.

13. Although the Substitute Trustee Defendants were responsible for overseeing the foreclosure sale, the actual details of the foreclosure process were carried out by employees of Defendant Shapiro & Burson.  In Ms. Ball's case, the Order to Docket and its required documentation were prepared by Defendant Shapiro & Burson for the benefit of the Substitute Trustee Defendants.

14. This Order to Docket was signed by Defendant Erik Yoder.

15. Each of the Substitute Trustee Defendants was listed as a substitute trustee in Ms. Ball's case.

16. Accompanying the Order to Docket was an affidavit signed by representatives of Shapiro & Burson acting to the benefit of the Substitute Trustee Defendants.  The affiant signing for Shapiro & Burson swore that Defendants' client was the noteholder and had the right to foreclose on the property.  The affiant also swore that a copy of the note was attached

to the Order to Docket and that the note was a true and accurate copy of the original.

However, the copy of the note was not actually included in the Order to Docket and was

never added to Ms. Ball's file at any point.

17. None of Defendants were ever in possession of the note—even though they swore that

they were in such possession at the time they ordered the foreclosure sale. This swearing

to untrue statements in the absence of the underlying evidence was the seed from which

the Defendants' collective enterprise of fraud and racketeering activity grew.

18. The same month that the Order to Docket was filed, the Substitute Trustee Defendants

sold Ms. Ball's property.

19. Defendants sold Ms. Ball's home without ever seeing the promissory note.

20. A few weeks later in December, Defendant Shapiro & Burson transmitted an eviction

notice to Ms. Ball via U.S. mail. This letter told Ms. Ball to vacate her property within

three days.

21. As a result of Defendant's demand, Ms. Ball moved out of the property in January of

2008.

22. Several months later, in August of 2008, the Substitute Trustee Defendants made the

court aware of the fact that the Order to Docket was defective. In an attempt to cure their

prior defect, they made the court aware that the purported noteholder was unable to find

the promissory note.

23. The Substitute Trustee Defendants filed with the Circuit Court a "Lost Note Affidavit."

24. The prior affidavit filed in November of 2007 was false because representatives of

Defendant Shapiro & Burson, acting to the benefit of the Substitute Trustee Defendants,

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

had been ordered simply to sign the affidavits and were provided with no documentation

to support their assertions that their client was in fact the noteholder.

25. Despite these errors, the Circuit Court ratified the foreclosure.

26. The Lost Note Affidavit was signed by a representative of Defendant Shapiro & Burson

named Jose Portillo.

27. Mr. Portillo signed the affidavit at the direction of the Substitute Trustee Defendants and

Defendant Shapiro & Burson.

28. In that affidavit, Mr. Portillo stated that a lender identified as IndyMac F.S.B. was the

owner of Ms. Ball's mortgage.  Mr. Portillo further stated that the note evidencing the

mortgage obligation had been lost or destroyed.  Finally, Mr. Portillo stated that IndyMac

F.S.B. was authorized and entitled to receive payments pursuant to the mortgage. *See*

Lost Note Affidavit, attached as Exhibit B.

29. In cooperation with a criminal investigation into misconduct at Defendant Shapiro &

Burson, Mr. Portillo exposed practices that he was directed to undertake pursuant to the

direction of the Substitute Trustee Defendants and Defendant Shapiro & Burson. *See*

Exhibit C.  In that affidavit, Mr. Portillo details an elaborate robo-signing operation

whereby each Defendant financially benefitted from fees and commissions in carrying

out foreclosures tainted by fraud.  He personally prepared and witnessed the preparation

of deeds and affidavits by other paralegals at Defendant Shapiro and Burson at the

direction of the Substitute Trustee Defendants.  Along with other paralegals, he was

directed by Defendants and agents acting on their behalf to prepare essential foreclosure

documents with a signature line for Defendant William M. Savage.  Along with other

paralegals, Mr. Portillo was instructed by Mr. Savage and a Shapiro & Burson manager

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

named Gloria Faria to prepare these documents and place them in Defendant Savage's office or adjoining room for review and signature at a later time.

30. On numerous occasions, an attorney other than Mr. Savage signed Mr. Savage's name to each document even though the deed represented that Mr. Savage was the signer. In addition, Mr. Portillo witnessed on more than one occasion an attorney by the name of Matthew McDowell who also worked for the U.S Patent and Trademark Office, sign William Savage's name to numerous documents essential to the foreclosure process.

31. Mr. Portillo estimated that approximately 70% to 75% of the deeds he and others prepared were signed by Matthew McDowell using William Savage's name. This amounted to over one thousand deeds prepared by the entire department and later recorded.

32. After McDowell signed Defendant Savage's name on these deeds, they were then returned to employees of Defendant Shapiro & Burson without Defendant Savage ever having examined the deed in question. Then, the employees were told by representatives of Shapiro & Burson, acting for the benefit of the Substitute Trustee Defendants, to notarize the deeds. These deeds were then recorded in all Maryland Counties transferring the foreclosed property back to the purchasing lender comprising more than a thousand instruments.

33. Mr. Portillo also witnessed a Shapiro & Burson manager, Goloria Faria, sign essential foreclosure documents on behalf of Defendant John Burson. Mr. Portillo stated that when he questioned this practice, "She would laugh it off and say to me 'Mr. Burson has given me carte-blanche.'" *See* Exhibit C at ¶ 23.

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

34. Mr. Portillo was simply told to sign the Lost Note Affidavit in Ms. Ball's case. He

further stated that he had no knowledge of the contents of the "Lost Note Affidavit" or

how or what role that document played into the foreclosure case of Ms. Ball's property or

any other foreclosure case because he never actually received any documents to verify

the statements he was swearing to. Mr. Portillo had no idea what had become of the

original note, and was not in a position to claim it had been lost or destroyed. In fact, no

employee of Shapiro & Burson had any knowledge of these statements. Mr. Portillo was

simply instructed to sign the document by Sharon Huddleston, which she later notarized.

Other employees of Shapiro & Burson were told to do the same.

35. Mr. Portillo stated that Shapiro & Burson's policies and practices did not require

documentation from lenders proving ownership of the notes prior to commencing the

foreclosure process. That was the case in *Burson v. Ball*, where he was told to sign an

affidavit certifying that the lender owned the note without being given any documents to

support that assertion.

36. According to Mr. Portillo, the praecipe in *Burson v. Ball*, requesting the Order of

Ratification bearing William M. Savage's did not appear to be Defendant Savage's real

signature. On many occasions, Mr. Portillo witnessed Sharon Huddleston signing Mr.

Savage's name to said documents in efforts to maximize the number of sale ratifications

from the Maryland circuit courts. Defendant Savage routinely failed to review the

documents bearing his supposed signature before they were filed with respective

Maryland courts.

37. According to Mr. Portillo, the signatures of the Principals on the Trustees Bond by

Lexington National Insurance Corporation, submitted to the Prince George's County

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

Circuit Court, Civil Division appeared not to be the true parties' signatures, and that they were all signed by one person. Upon information and belief, these were not the true signatures of John S. Burson, William M. Savage, Gregory N. Britto, Jason Murphy, Kristine D. Brown and Eric W. Yoder. Mr. Portillo witnessed Aimee Suzuki, a Shapiro & Burson employee, sign the names of all the aforementioned trustees on other foreclosure bonds. This was the standard business practice at the law firm of Shapiro & Burson.

38. The Trustee's Deed dated December 9, 2008 and recorded in the Land Records of Prince George's County in Liber 30227 at Folio 348, signed by William M. Savage is not the same signature as William M. Savage's purported signature on the praecipe filed with the court requesting the order of sale ratification in *Burson v. Ball*. Upon information and belief, one or both of these signatures is fraudulent.

39. The above-referenced misconduct details an elaborate fraud scheme designed to enrich each Defendant to the detriment of each of the named Plaintiffs and each member of the proposed class. It further demonstrates a pattern of racketeering activity engaged in by an enterprise for an unlawful purpose. Defendants illegally received fees for legal services and other financial compensation by representing that certain legal work had been done. Defendants further represented to their clients, to the Maryland courts, and to the Plaintiffs and the proposed class members that as a result of their due diligence (which did not actually occur), the foreclosure sales at issue complied with Maryland law, when in fact that was not the case. This illegal conduct was done to maximize the number of foreclosures Defendants could undertake and the fees and commissions they would receive from the same.

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

40. The Substitute Trustees received a commission out of the sale of Ms. Ball's home.

41. Shapiro & Burson received legal fees out of the legal work necessary to conduct the foreclosure at the Substitute Trustee Defendants' direction.

42. These fees were passed on to Ms. Ball.

43. The legal fees assessed in Ms. Ball's matter were excessive, unreasonable, and inappropriate in light of the lack of due diligence and the pattern of unlawful, fraudulent conduct Defendants undertook in reporting that those fees were actually earned.

44. Ms. Ball, like the members of the class, was unlawfully charged legal fees based on representations that certain legal work had been done when that was not actually the case.

45. Further, the Substitute Trustee Defendants and/or Defendant Shapiro & Burson impermissibly received fees and/or commissions out of the sale in the case of Ms. Ball, as with the members of the class.  These fees and commissions were based on Defendants' pattern of unlawful, fraudulent conduct.  The Defendants represented to their clients that certain due diligence, legal work, and administrative activities had been done in order to substantiate the basis for continuing with a judicial foreclosure under Maryland law.  Defendant represented to their clients, to the courts, and to the borrowers a false positive that the foreclosure filings Defendants had prepared were made in conformity with Maryland law.  Defendants' representations to their clients, to the courts, and to the borrowers were false and based on Defendants' pattern of unlawful, fraudulent activity whereby pro forma foreclosures were prepared in a massive robo-signing operation.  As a result, the fees and/or commissions received by the Substitute Trustee Defendants and/or Shapiro & Burson were unearned, fraudulently obtained, and impermissibly passed on to Plaintiff Ms. Ball and each member of the class.

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

46. In furtherance of Defendants' scheme to acquire fees through Ms. Ball's foreclosure based on fraudulent documents, Defendants used the U.S. mail system, e-mail, facsimile, landline telephones, and cellular phones.

## B. The Story of Charles Smalley

47. Plaintiff Charles Smalley purchased the property located at 1707 Gould Drive, District Heights, Maryland 20721 on June 22, 2006 for $430,000.00.  Mr. Smalley tendered no down payment at the time of sale and financed the entire purchase with two mortgages from Fremont Investment & Loan, valued at $344,000.00 (the "First Mortgage") and $86,000.00 (the "Second Mortgage"), respectively.

48. The deed of trust in the First Mortgage named Fremont Investment & Loan as the lender, Friedman & MacFayden, P.A. as the trustee, and the Mortgage Electronic Registration Systems ("MERS") as the beneficiary.

49. The First Mortgage was serviced by HomeEq Servicing, a division of Barclays Capital Real Estate, Inc.

50. In late 2007, Mr. Smalley began falling behind in his payments on the First Mortgage due to financial hardship.

51. During this time, Mr. Smalley tried repeatedly to modify his loan with HomeEq Servicing, but each time he was denied.

52. Mr. Smalley became delinquent on the First Mortgage on December 2, 2007, but he continued to make partial payments on the First Mortgage after this point.  However, the payments were insufficient to cure the delinquency as a result of penalties, late fees, and the size of the delinquent amount.

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

53. On March 27, 2008, MERS assigned the Second Mortgage to Mountaineer Investments, LLC, citing its authority to do so as nominee for Fremont Investment & Loan.

54. On April 3, 2009, a group of attorneys who are also employed at Defendant Shapiro and Burson were appointed as substitute trustees under the First Mortgage. The individuals named are the Substitute Trustee Defendants: John S. Burson, William M. Savage, Gregory N. Britto, Jason Murphy, Kristine D. Brown, and Erik W. Yoder.

55. On April 6, 2009, the Substitute Trustee Defendants sent a Notice of Intent to Foreclose on the Property to Mr. Smalley via U.S. mail.

56. On May 21, 2009, the Substitute Trustee Defendants filed an Order to Docket Foreclosure on the First Mortgage in the Prince George's County Circuit Court. This Order to Docket was signed by Defendant Jason Murphy. The Order to Docket Foreclosure contained several affidavits attesting to various facts necessary to carry out a foreclosure under Maryland Law. These affidavits were prepared by employees of Defendant Shapiro & Burson.

57. In the Statement of Debt included with the Order to Docket Foreclosure, Defendant Jason Murphy stated that he was the attorney for Barclays, the holder of (or agent of the holder of) the promissory note, and that he therefore had the right to foreclose. Defendant Jason Murphy was acting in his own capacity and as a representative of the other Substitute Trustee Defendants.

58. The Order to Docket also contained an affidavit, prepared by employees at Shapiro & Burson, and signed by one of the Substitute Trustee Defendants stating that he had verified that the party ordering the foreclosure was "the owner of the Note that is the subject of this foreclosure action and that the copy of the Note filed in this foreclosure

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

case is a true and accurate copy of said Note." This affidavit states that it was created in compliance with Section 7-105.1(D)(2)(III) of the Real Property Article of the Maryland Code. The affidavit is made "under penalties of perjury that the information contained in the foregoing paper are true to the best of my knowledge, information, and belief."

59. While the affidavit certifying ownership of the debt instrument lists the noteholder as Barclays Capital Real Estate, Inc., the note itself was payable on its face to Fremont Investment & Loan. At the time the Substitute Trustee signed this affidavit, the note contained no allonges or endorsements in favor of any institution. The Land Records Division of the Clerk of Court for Prince George's County contained no record of any transfer of ownership in the mortgage in favor Barclays Capital Real Estate, Inc. prior to the Substitute Trustee signing this affidavit.

60. The affidavit certifying ownership of the debt instrument was the result of Defendants' fraudulent robo-signing scheme whereby no employee of Shapiro & Burson actually verified that Barclays Capital Real Estate was truly the noteholder. The statements made in this affidavit were false because none of Defendants actually performed the due diligence to verify the accuracy of their statements.

61. At the direction of the Substitute Trustee Defendants, Shapiro & Burson transmitted the fraudulent affidavits to the Circuit Court for Prince George's County and to Mr. Smalley.

62. The fraudulent statements were transmitted via U.S. mail.

63. Mr. Smalley's property was sold at a foreclosure in April 2010, by the Substitute Trustee Defendants to an entity named 50 by 50 REO LLC.

64. On October 21, 2010, the sale of Mr. Smalley's property was ratified by the court.

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

65. As a part of the ratification process, Defendant Shapiro & Burson prepared a Trustee's Deed for conveyance of Mr. Smalley's property. This deed purports to bear the signature of Defendant John Burson. Whoever signed Defendant Burson's signature attested in that instrument that the deed was prepared under his direct supervision. Based on the statements made by Jose Portillo, this statement was false because none of the trustee deeds were actually prepared under the supervision of any of the Substitute Trustee Defendants.

66. On December 16, 2010, the Substitute Trustee Defendants served Mr. Smalley with a Notice to Vacate the Property via mail.

67. On December 30, 2010, the Substitute Trustee Defendants sent a notification of the commencement of eviction proceedings to Plaintiff via mail. The eviction proceeding was conducted by Defendant Shapiro & Burson.

68. The Substitute Trustees received a commission out of the sale of Mr. Smalley's home.

69. Shapiro & Burson received legal fees out of the legal work necessary to conduct the foreclosure at the Substitute Trustee Defendants' direction.

70. These fees were passed on to Mr. Smalley.

71. The legal fees assessed in Mr. Smalley's matter were excessive, unreasonable, and inappropriate in light of the lack of due diligence and the pattern of unlawful, fraudulent activity that Defendants undertook in reporting that those fees were actually earned.

72. Mr. Smalley, like the members of the class, was unlawfully charged legal fees based on representations that certain legal work had been done when that was not actually the case.

73. Further, the Substitute Trustee Defendants and/or Defendant Shapiro & Burson impermissibly received fees and/or commissions out of the sale in the case of Mr.

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

Smalley, as with the members of the class. These fees and commissions were based on

Defendants' pattern of unlawful, fraudulent conduct. The Defendants represented to their

clients that certain due diligence, legal work, and administrative activities had been done

in order to substantiate the basis for continuing with a judicial foreclosure under

Maryland law. Defendant represented to their clients, to the courts, and to the borrowers

a false positive that the foreclosure filings Defendants had prepared were made in

conformity with Maryland law. Defendants' representations to their clients, to the courts,

and to the borrowers were false and based on Defendants' pattern of unlawful, fraudulent

activity whereby pro forma foreclosures were prepared in a massive robo-signing

operation. As a result, the fees and/or commissions received by the Substitute Trustee

Defendants and/or Shapiro & Burson were unearned, fraudulently obtained, and

impermissibly passed on to Plaintiff Mr. Smalley and each member of the class.

74. Shapiro & Burson then received fees from the eviction proceedings it levied against Mr.
Smalley and his family.

75. In furtherance of Defendants' scheme to acquire fees through Mr. Smalley's foreclosure
based on fraudulent documents, Defendants used the U.S. mail system, e-mail, facsimile,
landline telephones, and cellular phones.

## C. The Robo-Signing Scandal At Shapiro & Burson Comes To Light.

76. In March of 2011, Prosecutors with the Prince George's County State's Attorney office
launched an investigation into the robo-signing practices employed by Defendant Shapiro
& Burson and by the Substitute Trustee Defendants.

77. Mr. Portillo describes a culture of Shapiro & Burson staff improperly swearing to
documents on behalf of attorneys and improper notarization of documents. (*See* Exhibit

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

D). He stated explicitly: "To my knowledge, Shapiro & Burson's policies and practices did not require documentation from lenders proving ownership of the notes prior to commencing the foreclosure process." Ex. D at ¶ 28(A).

78. After discovering the allegations at the base of this lawsuit, Freddie Mac terminated its business relationship with Defendants. *See* Exhibit E.

## CLASS ALLEGATIONS

79. The Plaintiffs bring this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

80. The class consists of (a) all Maryland residents (b) whose residential property (c) was foreclosed upon by the Substitute Trustee Defendants and Defendant Shapiro & Burson (d) under Maryland's judicial foreclosure process (e) during the previous four years.

81. The class is so numerous that joinder of all members is impracticable.

82. There are at least 250 members of the class and, based on the statements made by Jose Portillo, potentially thousands of class members.

83. There are questions of law and fact common to the class, which common questions predominate over any questions relating to individual class members. The predominant common questions are (1) whether Defendant Shapiro & Burson's standard foreclosure practices, policies, and procedures comprised a pattern of unlawful, fraudulent activity that (2) led to the imposition of impermissible fees against the lead Plaintiffs and the members of the class and (3) whether the Substitute Trustee Defendants directed, participated in, associated with, or conspired with Defendant Shapiro & Burson and each other in the above-mentioned pattern of unlawful, fraudulent activity.

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

84. Plaintiffs' claims are typical of the class members' claims. All are based on the same

factual and legal theories. Each of the lead Plaintiffs and each member of the class were

unlawfully assessed fees as a result of the same pattern of unlawful, fraudulent activity.

As explained fully in the above-listed sub-sections (a) and (b) detailing specific

allegations concerning Ms. Ball and Mr. Smalley, each of the lead Plaintiffs were victims

of a pattern of unlawful fraudulent activity in both the pre-sale and post-sale foreclosure

practices, policies, and procedures of Defendant Shapiro & Burson and the Substitute

Trustee Defendants. Both Plaintiffs were imposed impermissible fees as a result of this

pattern of unlawful fraudulent activity, as shown in sub-sections (a) and (b). Each

member of the class was a victim of the Defendants' pattern of unlawful fraudulent

activity in both the pre-sale and post-sale foreclosure practices, policies, and procedures.

Each member of the class was imposed impermissible fees as a result of this pattern of

unlawful, fraudulent activity in the same way described in sub-sections (a) and (b).

85. For the aforementioned reasons, Plaintiffs will fairly and adequately represent the class

members.

86. Plaintiffs have retained appropriate counsel. Counsel has spent nearly a year

investigating unlawful foreclosure practices in Maryland and has procured the evidence

underlying this Complaint from Mr. Jose Portillo. Counsel has interviewed scores of

homeowners who have been illegally foreclosed upon in Maryland. Counsel has

extensive experience litigating illegal foreclosures in state and federal court in Maryland

and the District of Columbia. Counsel also serves as a consultant to attorneys litigating

foreclosure fraud cases in other jurisdictions. As Counsel has devoted its practice to

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

representing distressed homeowners who are victims of foreclosure fraud, Counsel will fairly and adequately represent the class members.

87. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.  Individual actions are not economically feasible.  Most class members are not likely to seek redress for the ill-begotten fees assessed by Defendants, which from person to person may amount to less than $10,000.00.

    b.  Members of the class are likely to be unaware of their rights.  As the Defendants' pattern of unlawful, fraudulent activity was concealed even from the Maryland Circuit Courts and County Auditors responsible for oversight of Maryland's judicial foreclosure process, the class members are unlikely to be aware that the fees assessed against them were unlawful.

    c.  Litigating this matter as a class is in the interests of judicial economy.  As there are potentially thousands of class members, individual lawsuits against the Defendants would threaten to overwhelm the United States District Court for the District of Maryland.  Maintaining this lawsuit as a class action is an efficient means of managing the litigation against Defendants.

## COUNT I – FRAUD

88. Plaintiffs incorporate all previous allegations as if fully re-written herein.

89. The pattern of unlawful, fraudulent activity described above resulted in the imposition of unearned legal fees passed on to each Plaintiff and to each member of the class by the Substitute Trustee Defendants and Defendant Shapiro & Burson.

90. The pattern of unlawful, fraudulent activity described above resulted in the imposition of commissions or other fees from the foreclosure sales and passed on to each Plaintiff and

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

to each member of the class by the Substitute Trustee Defendants and Defendant Shapiro & Burson.

91. In the case of Ms. Ball and Mr. Smalley, as with each member of the class, the Defendants collectively represented to Maryland's circuit courts through Maryland's judicial foreclosure process that Defendants had rightfully earned legal fees and commissions and that they were therefore entitled to receive those fees.

92. Those statements were false and Defendants collectively knew they were false because each Defendant was aware of the pattern of unlawful, fraudulent conduct described in this lawsuit.

93. Defendants made these misrepresentations for the purpose of obtaining unearned fees from each Plaintiff and each member of the class and for the purpose of obtaining commissions based on fraudulently conducted foreclosure sales, which such illegitimate commissions were passed on to each Plaintiff and each member of the class.

94. Inasmuch as none of the Plaintiffs and none of the class members challenged the imposition of the commission or legal fees, they relied on Defendants' collective misrepresentations to their detriment.

95. Each Plaintiff and each member of the class has suffered actual damages in the amount of the legal fee obtained by Defendants and the commission and/or other fees obtained by Defendants and passed on to Plaintiffs and the members of the class.

96. In addition, as demonstrated by the foregoing allegations, Defendants' collective misconduct was not only exceptionally malicious or, at the very least, extraordinarily reckless, but also criminal in nature. As such, Plaintiffs are entitled to punitive damages in the maximum amount permitted by law.

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

97. Each Defendant is jointly and severally liable for the aforementioned damages.

## COUNT II – VIOLATIONS OF THE
## FEDERAL RICO STATUTE, 18 U.S.C. § 1961, *et seq.*

98. Plaintiffs incorporate all previous allegations as if fully re-written herein.

99. Each Defendant is a "person" within the meaning of 18 U.S.C. § 1962 because each individual and entity named as a Defendant herein is capable of holding a legal or beneficial interest in property.

100.    The Defendants collectively engaged in an enterprise within the meaning of 18 U.S.C. § 1962. Each of the Substitute Trustees are associated with each other and are associated both individually and collectively with Defendant Shapiro & Burson. Defendant Shapiro & Burson is a Virginia Limited Liability Partnership through which all of the Substitute Trustee Defendants are associated with one another. The Substitute Trustee Defendants are separately associated with one another for the purposes of their activities as substitute trustees. This enterprise has existed during the time period relevant to the class and the allegations listed in this lawsuit.

101.    Defendants have collectively engaged in a lengthy pattern of racketeering activity. As alleged in this lawsuit, Defendants have collectively committed, and conspired to commit, numerous, persistent, ongoing instances of mail fraud in violation of 18 U.S.C. § 1341; wire fraud in violation of 18 U.S.C. § 1343; bank fraud in violation of 18 U.S.C. § 1344; racketeering under 18 U.S.C. § 1952; and engaging in unlawful monetary transactions under 18 U.S.C. § 1957. Defendants' pattern of conduct has spanned several years and has affected not just the Plaintiffs and class members listed in this lawsuit, but also the Maryland judicial system and Defendants' own clients.

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

102.     Defendants' enterprise operated from their Virginia location to carry out their

pattern of unlawful, fraudulent activities throughout the state of Maryland.  Defendants'

clients were financial institutions located outside of Virginia.  From their Virginia

location, Defendants unlawfully solicited business from out-of-state clients, conducted

out-of-state foreclosure sales, and transmitted funds across state lines.  This enterprise

was directly engaged in interstate commerce.

### Violations of 18 U.S.C. § 1962(a)

103.     Each Defendant was a principal in the described enterprise and each Defendant

received income via the ill-begotten fees from participating in the pattern of racketeering

activity described in this lawsuit.

104.     Each Defendant used and/or invested or re-invested the income or the proceeds

from the income described in the aforementioned allegation for the purpose of operating

the described enterprise.  Each of the Substitute Trustee Defendants re-invested their

income through their affiliation with Defendant Shapiro & Burson LLP.  Defendant

Shapiro & Burson LLP used and/or invested its income to create an elaborate pre-sale

and post-sale robo-signing operation that defrauded thousands of Maryland homeowners

into paying unearned legal fees and commissions from unlawful foreclosure sales.

### Violations of 18 U.S.C. § 1962(b)

105.     Each Defendant used its involvement in the pattern of racketeering activity

described in this lawsuit to gain a financial interest in the enterprise described herein.

### Violations of 18 U.S.C. § 1962(c)

106.     Each of the Substitute Trustee Defendants were employed by Defendant Shapiro

& Burson.  The Substitute Trustee Defendants were associated with one another through

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

this relationship and through their business enterprise as trustees.  Through these

relationships, each Defendant was associated with the enterprise described in this lawsuit.

107.    Each Defendant conducted and participated in the enterprise's affairs through the

pattern of racketeering activity described above.

### Violations of 18 U.S.C. § 1962(d)

108.    Each of the Substitute Trustee Defendants agreed with one another to carry out

the foreclosure sales at issue in this lawsuit.  Defendant Shapiro & Burson agreed with

the Substitute Trustee Defendants to provide legal services in furtherance of the

Defendants' collective pre-sale and post-sale foreclosure activities.

109.     Each of the Defendants' collective actions assisted in carrying out the fraudulent

activities undertaken by employees of Shapiro & Burson done at the direction of

Defendant Shapiro & Burson and at the direction of certain of the Substitute Trustee

Defendants, including, but not limited to, John Burson and William Savage.

110.    Each of the Substitute Trustee Defendants and Defendant Shapiro & Burson

benefitted monetarily from their individual agreement to join in the enterprise and the

commission of the racketeering activity described above.

### Damages

111.    Each of the Defendants' collective actions resulted in the assessment of illegal,

unearned, illegitimate, and fraudulent fees and/or commissions that were passed on to the

Plaintiffs and to each member of the class.

112.    Defendants' exceptionally malicious and criminal misconduct entitles Plaintiffs

and the members of the class to an award of triple their actual damages based on the

amount of the fees and/or commissions unlawfully paid to each of the Substitute Trustees and to Defendant Shapiro & Burson.

113.    Plaintiffs also seek disgorgement of the fees each of the Defendants received from the pattern of racketeering activity described herein.

114.    Plaintiffs further seek an award of attorney fees and the costs of maintaining this action.

115.    Each Defendant is jointly and severally liable for the damages sought herein.

## COUNT III – CONSPIRACY TO COMMIT FRAUD

116.    Plaintiffs incorporate all previous allegations as if fully re-written herein.

117.    As described above, each of the Defendants agreed to participate in a fraud scheme that resulted in the imposition of illegal fees and commissions assessed against Plaintiffs and the members of the class.

118.    The fraud scheme described herein proximately resulted in the injuries sustained by Plaintiffs and each member of the class.

119.    Plaintiffs therefore seek actual damages, punitive damages, attorney fees, and the costs of maintaining this action.

120.    Each Defendant is jointly and severally liable for the damages sought herein.

## COUNT IV – VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT

121.    Plaintiffs incorporate all previous allegations as if fully re-written herein.

122.    Defendants' misconduct as alleged herein constitutes numerous violations of the Maryland Consumer Protection Act.

123.    The aforementioned misconduct violates the Commercial Law Article of the Maryland Code at §§ 13-303(4), 13-301(1), (3), and (9).

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

124.    As a result, Plaintiffs seek actual damages and an award of attorney fees for the costs of maintaining this action.

125.    Each Defendant is jointly and severally liable for the damages sought herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants for the following relief:

A.  Actual and statutory damages;

B.  Triple the actual damages of the Plaintiffs and each member of the class;

C.  Disgorgement from each Defendant for the fees and commissions they acquired through the misconduct described in this lawsuit;

D.  Punitive damages against each Defendant for their criminal, exceptionally malicious, and/or extremely reckless misconduct;

E.  Statutory damages under the Maryland Consumer Protection Act for each unfair and/or deceptive statement or act committed in furtherance of the unlawful scheme described in this lawsuit; and

F.  Judgment for attorney fees, court costs, and such other relief as this Court may deem appropriate.

Respectfully submitted,

Ian Stumpf
JR HOWELL & ASSOCIATES
1325 G Street NW
Suite 500
Washington D.C. 20005
P: 202.552.7386
F: 202.552.7387
E: istumpf@jrhlegalstrategies.com
*Attorney for Plaintiffs*

## **JURY DEMAND**

Plaintiffs request a trial by jury with respect to all matters and issues properly triable by a jury.

DATED: 4/7/11

Respectfully submitted,

*Attorney for Plaintiffs*

JR Howell & Associates
1325 G Street NW
Suite 500
Washington D.C. 20005
202.552.7386

## NOTICE OF LIEN

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.  All rights relating to attorney's fees have been assigned to counsel.

Respectfully submitted,

Ian Stumpf
**JR HOWELL & ASSOCIATES**
1325 G Street NW
Suite 500
Washington D.C. 20005
P: 202.552.7386
F: 202.552.7387
E: istumpf@jrhlegalstrategies.com
*Attorney for Plaintiffs*