# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MR. CHARLES SMALLEY,** *et al.* | ) | **CASE NO.:  8:11-cv-00906-JFM** |
| | ) | |
| **Plaintiffs,** | ) | **Judge Frederick Motz** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **SHAPIRO & BURSON, LLP,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT
JOHN BURSON, WILLIAM SAVAGE, AND SHAPIRO & BURSON'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

**DATE:** December 7, 2011

Jimmy R. Howell (29606)
Ian Stumpf (18052)
JR HOWELL & ASSOCIATES
1325 G Street NW, Suite 500
Washington D.C. 20005
P: 202.552.7386
F: 202.518.2571
jrhowell@jrhlegalstrategies.com
istumpf@jrhlegalstrategies.com
*Attorneys for Plaintiffs*

TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................. 1

LAW AND ARGUMENT ............................................................................................... 2

    I.     Neither Plaintiffs' Claims Are Barred By The Rooker-Feldman Doctrine ........... 2

          A.     Plaintiffs Challenge The Improper Assessment of Fees During The State Court Action, Which Is Not Barred By Rooker-Feldman. ........................ 3

    II.    Neither Plaintiffs' Claims Are Barred By Issue Or Claim Preclusion................... 6

          A.     Plaintiffs' Cases Do Not Meet The Elements of Res Judicata................... 7

          B.     Plaintiffs' Claims Do Not Satisfy The Elements Of Collateral Estoppel. .. 8

               1.     Defendant Shapiro & Burson Was Not A Party To The Prior Action............................................................................................. 9

               2.     As Trustees for Both The Lenders And The Debtors, Defendants Were Not "Parties" To The State Court Judgment. ........................ 9

               3.     The State Court Judgments Did Not Address The Merits Of Plaintiffs' Claims. ....................................................................... 12

          C.     The Fee Issue Is Separate From The Underlying Merits. ........................ 13

          D.     The Reasonableness Of The Attorney Fees Was Never Litigated............ 13

          E.     Plaintiff Smalley Made No Substantive Challenges To The Prior Foreclosure, The Audit Report, Or The Attorney Fees. .......................... 13

          F.     Plaintiff Ball's Challenges To The Prior Foreclosure Were Aimed At The Validity Of The Sale Itself And Not To The Assessment Of Attorney Fees As In This Case........................................................................................ 15

          G.     Even If The Fee Issue Was On The Merits, The Foreclosure Action Is Not Binding On Matters Of Personal Liability, Such As The Attorney Fees And Commissions At Issue........................................................................ 16

               1.     The Causes Of Action Are Not Identical...................................... 18

          H.     In The Case Of Plaintiff Ball, The Court's Denial Of The Requested Accounting Demonstrates Why These Claims Are Not Identical. ........... 19

    III.   Plaintiffs' Claims Present Several Exceptions To Issue/Claim Preclusion. ......... 20

          A.     Plaintiffs' Claims Are Not Precluded Where They Are Based On Facts Unavailable To Them Only After The Applicable Time Period Passed. . 20

          B.     Res Judicata Only Bars Claims That Challenge The Validity Of The Sale. ................................................................................................................ 20

          C.     Res Judicata Is Inapplicable In Instances Of Fraud. ................................ 21

          D.     Neither Issue Nor Claim Preclusion Attached Because Both Of The Opinions Below Resulted In Judgments By Default. .............................. 22

IV.    Plaintiffs Have Sufficiently Stated Claims For Relief Under The FHA................ 23

V.    The Statute of Limitations Does Not Bar Plaintiff's Claims Under the FHA Because She Has Asserted Theories of Disparate Impact Discrimination. .......... 26

VI.    Plaintiffs' FDCPA Claims Are Not Time-Barred................................................... 29

VII.    None Of Plaintiff Ball's State Law Claims Are Time-Barred.............................. 30

VIII.    Plaintiffs Have Stated A Claim Under The Federal RICO Statute....................... 32

IX.    Plaintiffs Have Stated A Claim For Fraud, Conspiracy, and The Maryland Consumer Protection Act....................................................................................... 33

X.    Plaintiffs Have Stated A Claim Under The Federal Fair Debt Collection Practices Act........................................................................................................................... 40

XI.    The Substitute Trustees' Immunity Defense Is Without Merit And Must Be Dismissed............................................................................................................... 40

CONCLUSION.................................................................................................................... 41

TABLE OF AUTHORITIES

## Cases

*Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432 (6th Cir. 2006) ............................ 7

*Albert v. Hamilton*, 76 Md. 304, 25 A. 341 (1892) ....................................................................... 22

*Anderson v. Joseph*, 200 Md. App. 240 (Md. Ct. Spec. App. 2011) ............................................ 47

*Anyanwutaku v. Fleet Mortg. Grp., Inc*., 85 F. Supp. 2d 566 (D. Md. 2000) ........................ 22, 23

*Arizona v. California*, 530 U.S. 392 (2000) ............................................................................... 9, 27

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). ...................................................... 2

*Bachrach v. United Cooperative*, 181 Md. 315, 29 A. 2d 822 (Md. 1943); .................................. 26

*Bachrach v. United Cooperative*, 181 Md. 315, 29 A.2d 822 (1943) ........................................... 22

*Badger v. Badger*, 69 Utah 293, 254 P. 784 (1927) ..................................................................... 24

*Bainder v. Bldg. & Loan Assn*., 161 Md. 597 (1932) .................................................................... 20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). .................................................................... 2

*Brooks v. Auto Sales & Servs*., 2001 U.S. Dist. LEXIS 8059, 2001 WL 686950 (S.D. Ind. 2001)
.......................................................................................................................................... 5, 6

*Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996) .................................................... 34

*Brown v. First Nationwide Mortgage Corp*., 206 F. App'x 436, 440 (6th Cir. 2006) ................... 7

*Budinich v. Becton Dickinson & Co*., 486 U.S. 196  (U.S. 1988) .................................... 14, 15, 16

*Carolina Cas. Ins. Co. v. Draper & Goldberg*, 138 Fed. Appx. 542 (4th Cir. 2005) ................... 9

*Carolina Power & Light Co. v. Dynegy Mktg. & Trade*, 415 F.3d 354 (4th Cir. 2005) .............. 15

*Charter Oak Fire Ins. Co. v. Am. Capital, Ltd*., DKC 09-0100, 2011 U.S. Dist. LEXIS 23627 (D.
Md. Mar. 9, 2011) ........................................................................................................... 18

*Charter Oak Fire Ins. Co. v. Am. Capital, Ltd*., DKC 09-0100, 2011 U.S. Dist. LEXIS 23627 (D.
Md. Mar. 9, 2011). .......................................................................................................... 11

*Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371, 761 A.2d 899 (2000) .......................... 10, 17

*D'Aoust v. Diamond*, 197 Md. App. 195 (Md. Ct. Spec. App. 2010). .......................................... 48

*Davis v. Gen. Motors Acceptance Corp.*, 406 F. Supp. 2d 698 (N.D. Miss. 2005) ............... 33, 34

*Davis v. Public Emples. Ret. Bd.*, 899 N.E.2d 975 (Ohio 2008) .................................................... 9

*deLeon v. Slear*, 328 Md. 569, 616 A.2d 380, (Md. 1992) .......................................................... 22

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ..................................... 2

*Doe v. District of Columbia Comm'n on Human Rights*, 624 A.2d 440 (D.C. 1993) ................. 37

*Ed Jacobsen, Jr., Inc. v. Barrick*, 252 Md. 507, 250 A.2d 646 (1969) ........................................ 22

*Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126 (10th Cir. 2007) ............................................... 18

*Evans v. Chase Manhattan Mortg. Corp.*, 2006 U.S. Dist. LEXIS 17069 (D.D.C. Mar. 27, 2006)
........................................................................................................................................ 13, 14

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005) ................................. 3

*Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 338 Md. 1 (Md. 1995) ...................................... 20, 21

*Fifth Third Bank ex rel. Trust Officer v. CSX Corp.*, 415 F.3d 741 (7th Cir. 2005) ................... 18

*Foster v. D.B.S. Collection Agency, et al*., 463 F. Supp. 2d 783 (S.D. Ohio 2006) ...................... 7

*Gaither Corp. v. Skinner*, 241 N.C. 532, 85 S.E.2d 909 (1955) ................................................... 24

*Gamble v. City of Escondido*, 104 F.3d 300 (9th Cir. 1997) .................................................. 29, 31

*Geisey v. Holberg*, 185 Md. 642, 45 A. 2d 735 (1946) ................................................................ 26

*Gerber v. Karr*, 231 Md. 180, 189 A. 2d 353 (Md. 1963). ......................................................... 26

*Gerber v. Karr*, 231 Md. 180, 189 A.2d 353 (1963) ................................................................... 22

*Goodman v. Praxair, Inc*., 494 F.3d 458 (4th Cir. 2007) ............................................................. 12

*Gourdine v. Crews*, 405 Md. 722 (Md. 2008) ............................................................................. 38

*Green v. Ford Motor Credit Co.*, 152 Md. App. 32 (Md. Ct. Spec. App. 2003) .......................... 25

*Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri*, 2001 U.S. Dist. LEXIS 20012, 2001 WL 1543516 (N.D. Ill. 2001) ......................................................................................................... 6

*Hapgood v. City of Warren*, 127 F.3d 490 (6th Cir. 1997) ............................................................. 8

*Havens Realty Corporation v. Coleman*, 455 U.S. 363 (1982). .............................................. 31, 32

*Hawkins v. Citicorp Credit Servs.* 665 F. Supp. 2d 518 (D. Md. 2009) ...................................... 28

*Hendel v. World Plan Executive Council*, 705 A.2d 656 (D.C. 1997) ......................................... 37

*Hersh v. Allnutt*, 252 Md. 513 (Md. 1969) ................................................................................. 26

*Hersh v. Allnutt*, 252 Md. 513, 250 A.2d 629 (1969) .................................................................. 22

*Holcombe v. Whitaker*, 294 Ala. 430, 318 So. 2d 289 (Ala. 1975) .............................................. 39

*Holland v. Spear & Co.*, 193 Misc. 524, 83 N.Y.S.2d 21 (1948) ................................................. 24

*In re Cmty. Bank of N. Va.*: 467 F. Supp. 2d 466 (W.D. Pa. 2006) ............................................. 37

*Institutional Mgmt. v. Cutler Computer*, 294 Md. 626, 451 A.2d 1224 (Md. 1982) ................... 10

*Jones v. HSBC Bank USA, N.A.*, 2011 U.S. App. LEXIS 17886 (4th Cir. Aug. 25, 2011) .......... 21

*Jones v. Rosenberg*, 178 Md. App. 54, 940 A.2d 1109 (2008) ..................................................... 25

*Jones v. SEC*, 115 F.3d 1173 (4th Cir. 1997) .......................................................................... 11, 12

*Kilduff v. Adams, Inc.*, 593 A.2d 478 (Conn. 1991) ................................................................... 39

*Kneip v. Unitedbank-Victoria*, 734 S.W.2d 130 (Tex. App. 1987) ............................................. 39

*Kougasian v. TMSL, Inc.*, 359 F.3d 1136 (9th Cir. 2004) ............................................................ 7

*Kovacic v. Cuyahoga County Dep't of Children & Family Servs.*, 606 F.3d 301 (6th Cir. 2010) 3, 6

*Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982) .... 11

*Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains*, 284 F.3d 442 (3d Cir. 2002) ................................................................................................................................. 29, 31

*Macon & Augusta R.R. Co. v. Garrard*, 54 Ga. 327 (1874) ....................................................... 24

*Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935 (9th Cir. 2009) ............................... 35, 36

*Mangum v. America's Servicing Co.*, 2011 U.S. Dist. LEXIS 129531, 18-19 (S.D. Tex. Oct. 12, 2011) ..................................................................................................................................... 13, 14

*Manigan v. Burson*, 160 Md. App. 114, 862 A.2d 1037 (Md. Ct. Spec. App. 2004). ................. 25

*Maryland Envt Trust v. Gaynor*, 370 Md. 89, 803 A.2d 512 (2002) .......................................... 40

*Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership*, 100 Md. App. 441 (Md. Ct. Spec. App. 1994) ........................................................................................................................................... 16

*McCormick v. Braverman*, 451 F.3d 382 (6th Cir. 2006) ............................................................. 4

*Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75 (1984) ........................................... 8

*MPC, Inc. v. Kenny*, 279 Md. 29, 367 A.2d 486 (Md. 1977) ...................................................... 10

*Nails v. S & R*, 334 Md. 398, 639 A.2d 660 (1994) .................................................................... 40

*Nat'l Fair Housing Alliance v. A.G. Spanos Constr., Inc.*, 542 F. Supp. 2d 1054 (N.D. Cal. 2008) ........................................................................................................................................... 33

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). ................................................... 32

*Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321 (D.C. 1995). .................................... 40

*Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 241 F. App'x 285 (6th Cir. 2007) 4

*Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116 (4th Cir. 1989) ....................................... 17, 19, 27

*Poku v. FDIC*, 2011 U.S. Dist. LEXIS 8699 (D. Md. Jan. 31, 2011) .......................................... 21

*Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120 (1945). ...................................................... 15

*Ragland v. A.W. Indus.*, No. DKC 2008-1817, 2009 U.S. Dist. LEXIS 71889 (D. Md. Aug. 13, 2009). ......................................................................................................................................... 34

*Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F. Supp. 2d 922 (N.D. Cal. 2008)........... 33, 34

*Reid v. Wells Fargo Home Mortg.*, 2011 U.S. Dist. LEXIS 102713 (D. Md. Sept. 12, 2011)..... 13

*Republican Party of N.C. v. Martin*, 980 F.2d 943 (4th Cir. 1992) ........................................... 1, 2

*Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244 (4th Cir. 1993)...................... 12

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)........................................................................ 2

*Senftle v. Landau* 390 F. Supp. 2d 463 (D. Md. 2005) ............................................................. 4, 5

*Singer v. Steven Kokes, Inc.*, 39 Md. App. 180 (Md. Ct. Spec. App. 1978)................................ 24

*Todd v. Weltman, Weinberg & Reis, Co., L.P.A.*, 348 F. Supp. 2d 903 (S.D. Oh. 2004).............. 5

*United States v. Boylan*, 898 F2d 230, (1st Cir. 1990) cert. den. 498 U.S. 849 (1990)............... 46

*United States v. Marcello*, 537 F. Supp. 1364 (E.D. La. 1982) aff'd (5th Cir. 1983) 703 F.2d 805,
   reh. den. (5th Cir. 1983) 707 F.2d 515 and reh. den. (5th Cir.1983) 708 F.2d 720 and cert. den.
   464 U.S. 935 (1983)................................................................................................................ 46

*VF Corp. v. Wrexham Aviation*, 350 Md. 693, 715 A.2d 188 (1998).......................................... 40

*Walde v. Capital Mortg. Inv.*, 286 Md. 343 (Md. 1979)............................................................... 21

*Washington Suburban Sanitary Comm'n v. TKU Assocs.*, 281 Md. 1, 376 A.2d 505 (1977) ...... 10

*Webster v. Archer*, 176 Md. 245 (Md. 1939)............................................................................... 14

*Wheeler Savings Bank v. Tracey*, 141 Mo. 252, 42 S.W. 946 (1897) ........................................ 24

## Other Authorities

15 U.S.C. § 1692 *et seq.*................................................................................................. 35, 36, 47

15 U.S.C. § 1692f ....................................................................................................................... 47

15 U.S.C. § 1692k(d) .................................................................................................................. 35

24 C.F.R. § 100.50(b)(3)............................................................................................................. 29

24 C.F.R. § 100.70(b) ................................................................................................................. 29

28 U.S.C. § 1257(a) ...................................................................................................................... 3

42 U.S.C. § 3604(b) .................................................................................................................... 28

42 U.S.C. § 3613(a)(1)(A) .......................................................................................................... 31

Fed. R. Civ. P. 12(b)(6)........................................................................................................... 2, 31

Fed. R.Civ. P. 9(b) ...................................................................................................................... 41

Md. Code Ann., Com. Law § 13-101 *et seq.* .................................................................. 36, 41, 47

Md. Rules 14-201, *et seq.* ........................................................................................................... 42

Miller's Equity Procedure, §§ 484-85 ........................................................................................ 27

Restatement (Second) of Judgments § 27 (1982) ................................................................... 9, 27

**INTRODUCTION**

Defendants attempt to cast Plaintiffs' claims as attacking the validity of two prior foreclosures that were ratified by Maryland's state courts.  To the contrary, each Plaintiff challenges excessive fees that Defendants assessed after the foreclosures were completed.  Those fees were assessed post-ratification.  Plaintiffs could not have known that those fees were excessive or unearned until a whistleblower came forward.[1]  The focus of Plaintiffs' Complaint is on the manner in which Defendants collected their debts,[2] not the validity of those underlying debts.  When read in this light, all of Defendants' arguments fail because they misinterpret the true source of Plaintiffs' injuries. The heart of all of Plaintiffs' claims stem from fees that were assessed against them by Defendants.  Plaintiffs allege that these fees, assessed after the foreclosure sales were completed, were either unearned or unreasonably excessive in light of the work performed.

Nowhere in Defendants' lengthy motion do they contend that this theory fails to state a claim upon which relief can be granted.

**STANDARD OF REVIEW**

In considering a motion to dismiss under Rule 12(b)(6), the Court must assume that the allegations in the non-moving party's pleadings are true and must construe all facts in the light most favorable to the non-moving party. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  Traditionally, a motion to dismiss under 12(b)(6) "tests the sufficiency of a complaint;… it does not resolve contests surrounding the facts, the merits of a claim, or the

---

[1] *See* Exhibit C to the Original Complaint (Dkt #1).

[2] Compl. at ¶ 1 ("Defendants' foreclosure operation is based on pre-programmed data from a third-party, over which Defendants maintain absolutely no oversight or control.  With a fully automated foreclosure operation, Defendants have set in place a robotic foreclosure operation implemented by non-lawyers with very little, if any, oversight by licensed attorneys who can verify that the foreclosures comply with Maryland law.").

applicability of defenses." *Republican Party of N.C.*, 980 F.2d at 952. In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that a complaint must "state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Plaintiffs have sufficiently stated claims for relief and Defendants' Motion should be denied.

## LAW AND ARGUMENT

**I.     Neither Plaintiffs' Claims Are Barred By the Rooker-Feldman Doctrine**

Interpreting a statute "designed to prohibit end-runs around state court judgments," the United States Supreme Court in *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) held that lower federal courts lacked jurisdiction to conduct appellate review of state court judgments.  *See* 28 U.S.C. § 1257(a).[3] The Rooker-Feldman doctrine, as it has come to be known, "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005). But "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has

---

[3] "Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."

2

reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id*. at 293.

The Sixth Circuit has explained that "the pertinent inquiry after *Exxon* is whether the 'source of the injury' upon which plaintiff basis [sic] his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state court judgment." *Kovacic v. Cuyahoga County Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010) (quoting *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)). As such, "Rooker-Feldman does not bar a federal-court challenge to an individual's improper conduct during a prior state court proceeding." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 241 F. App'x 285, 288 (6th Cir. 2007).

Here, Plaintiffs challenge the improper conduct of the Substitute Trustee Defendants and Shapiro & Burson in the prior foreclosure actions.  In addition, Plaintiffs challenge the basis of unearned fees assessed by either the Substitute Trustees or Shapiro & Burson, a non-party to the prior actions, which appears to have performed legal work on behalf of the Substitute Trustee Defendants.[4]  Though this misconduct might be intertwined with the prior proceedings, Plaintiffs are not barred from challenging injuries stemming therefrom.

### A. Plaintiffs Challenge The Improper Assessment of Fees During The State Court Action, Which Is Not Barred By Rooker-Feldman.

Plaintiffs' claims challenge the manner in which Defendants collected their debts, not the validity of the state court judgment from which those debts arose. The Honorable Judge Messitte of this Court in *Senftle v. Landau* 390 F. Supp. 2d 463, 469-470 (D. Md. 2005) pointed out that claims such as Plaintiffs are not within the purview of the *Rooker-Feldman* doctrine:

---

[4] Without the benefit of discovery, neither Plaintiffs nor the Court can know the complete role played by Defendant Shapiro & Burson and which party actually claimed the fees assessed. What is certain is that Shapiro & Burson was not a party to either of the prior actions and cannot assert the defenses of issue and claim preclusion here, as will be discussed further herein.

> Here Senftle's [complaint] alleges four violations of the FDCPA, all of which pertain to the manner in which Landau collected Senftle's debt, not the validity of the underlying debt. That, in the Court's view, suffices to permit the claims to go forward in this Court. [A] FDCPA claim has nothing to do with whether the underlying debt is valid when it concerns the method of collection. When a FDCPA claim concerns collection activities, a FDCPA claim does not arise out of the transaction creating the debt. . . . Senftle's injury relates to his creditor's alleged willful failure to give him notice of his rights, denial of his right to dispute the underlying debt, failure to disclose that it (or its agent) were debt collectors, and refusal to verify his debt, **not the Circuit Court's judgment determining that the debt was valid**. Accordingly, *Rooker-Feldman* does not bar Senftle's FDCPA claim.

390 F. Supp. 2d 463, 469-470 (D. Md. 2005) (internal citations and quotations omitted).

In reaching this decision, the Honorable Judge Messitte pointed out that "even if the Circuit Court correctly determined that the underlying debt was valid, Maryland rules of *res judicata* would not preclude Senftle from later seeking damages against creditors for illegally collecting that debt." *Id.* This is exactly the type of claim Plaintiffs allege in their Complaint.

In furtherance of this point, Plaintiffs seize on Defendants' arguments that Plaintiffs do not dispute their defaulted status or the right of their lenders to foreclose. In this federal action, Plaintiffs assert that whether one lawfully owes a debt has nothing to do with any person's right to be free from fraudulent debt collection practices.

That is why the court in *Todd v. Weltman, Weinberg & Reis, Co., L.P.A.,* concluded that *Rooker-Feldman* was no bar to a separate FDCPA claim against a debt collector for filing false affidavits in a previous state-court garnishment action. 348 F. Supp. 2d 903 (S.D. Oh. 2004). Similarly, the court in *Brooks v. Auto Sales & Servs.*, held that *Rooker-Feldman* did not bar an FDCPA claim alleging false, deceptive, or misleading representations in connection with a judicial debt enforcement action. 2001 U.S. Dist. LEXIS 8059, 2001 WL 686950, *4 (S.D. Ind. 2001). Further, the court in *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri*, held that *Rooker-Feldman* did not bar an FDCPA claim where violations arose from the defendant's

pre-judgment collection activities and not from the judgments themselves. *Hamid v. Blatt, Hasenmiller, Leibsker, Moore & Pellettieri*, 2001 U.S. Dist. LEXIS 20012, 2001 WL 1543516 *10 (N.D. Ill. 2001).

Defendants also make much ado that Plaintiffs' alleged harms come from the filing of fraudulent affidavits and other documents. However, Plaintiffs' argument is that the fees assessed against them in post-foreclosure proceedings is the source of their harms. Contrary to Defendants' argument, the Court must look to the source of the ***injury***, not the remedy, to determine whether it has subject matter jurisdiction over a claim. *See Kovacic*, 606 F.3d at 309. In the case *sub judice*, the injury of which both Plaintiffs complain is the assessment of fees that were either entirely unearned or unreasonable by virtue of the fraud perpetrated upon them through the filing of false affidavits and other documents. That the validity of the documents and the validity of the state court judgment might be intertwined is not determinative. *See id.*

The Court has jurisdiction to rule on the validity of the fees assessed incident to the state court rulings on the foreclosures themselves. *Accord Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) (holding Rooker-Feldman did not bar plaintiff's FDCPA claim that defendant obtained a favorable state court judgment through fraudulent affidavit); *Brown v. First Nationwide Mortgage Corp*., 206 F. App'x 436, 440 (6th Cir. 2006) (per curiam) (holding *Rooker-Feldman* did not bar plaintiff's claims based on foreclosure obtained through defendants' fraud); *Foster v. D.B.S. Collection Agency, et al*., 463 F. Supp. 2d 783, 798 (S.D. Ohio 2006) (holding that *Rooker-Feldman* doctrine did not bar claims under the FDCPA based on illegal actions defendants took to obtain default judgment against plaintiff); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) (holding that *Rooker-Feldman* did

not bar plaintiffs' attempt to set aside state court judgments based on defendants' extrinsic

fraud).

The *Rooker-Feldman* Doctrine does not apply and Defendants' Motion to Dismiss should

be denied.

## II.   Neither Plaintiffs' Claims Are Barred By Issue Or Claim Preclusion.

Neither issue nor claim preclusion applies to the case at bar.  Over the last several years,

tens of thousands of Maryland homeowners lost their homes via the judicial foreclosure process.

If Defendants' contention is correct, it would mean that even homeowners who conceded their

home to foreclosure are bound to the illegal fees assessed against them by Defendants because

the foreclosure judgment is final.  This is not so.  In this Opposition Brief, Plaintiffs explain that

there are two distinct issues: (1) the propriety of the foreclosure judgments themselves, which

Plaintiffs concede which are subject to preclusion, but not at issue in this matter; and (2) the

reasonableness of fees and commissions assessed after the foreclosures were completed.  For the

reasons listed below, Maryland consumers are not bound by issue or claim preclusion to accept

unreasonable fees and commissions, especially where the grounds for challenging the fees was

only discovered after the state courts ratified the foreclosure sales.

First, the elements of those doctrines are not even satisfied here.  Second, there are

multiple doctrines that exempt the application of *res judicata* and collateral estoppel here. "Issue

preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been

litigated and decided." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1

(1984).  Similarly, "[c]laim preclusion refers to the effect of a judgment in foreclosing litigation

of a matter that never has been litigated because of a determination that it should have been

advanced in an earlier suit." *Id.* "[W]hen asked to give preclusive effect to a prior state court

judgment, a federal court must look to the law of the rendering state to determine whether and to

what extent that prior judgment should receive preclusive effect in a federal action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997) (citing *Migra*, 465 U.S. at 81). Because the state court judgment at issue is from Maryland, Maryland law controls in this case.

### A. Plaintiffs' Cases Do Not Meet The Elements of Res Judicata.

To support a claim of issue preclusion, a party must prove three elements: (1) the precise fact or issue was "actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction, and (3). . . the party  against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Davis v. Public Emples. Ret. Bd.*, 899 N.E.2d 975, 982 (Ohio 2008). An issue has not been actually litigated "'[i]n the case of a judgment entered by confession, consent, or default.'" *Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement (Second) of Judgments § 27, cmt. e (1982)).

In arguing for preclusion, the Defendants urge this Court to focus on the nature of the evidence and not the injuries sustained. They contend that the issue of fraudulent affidavits has been actually litigated in state courts in the Defendants' favor against the Plaintiffs.  However, Plaintiffs' claims stem from the injury of attorney fees assessed against them that were either completely unearned or excessive in light of the services rendered.  To be sure, part of Plaintiffs' claims arises from evidence consisting of certain falsified affidavits.  But that is not the extent of the evidence necessary to prove their claims, however.[5]  Furthermore, Plaintiffs could not have known about their injury or the evidence necessary to prove their claims until a whistleblower from inside Shapiro & Burson came forward.

---

[5] For instance, the Complaint alleges that fees were unreasonable because "Shapiro & Burson routinely engages in foreclosures without any personnel—let alone a licensed attorney—actually reviewing essential mortgage information to verify the integrity of the foreclosure process." Compl. at ¶ 141.  Here, the Complaint alleges that Maryland homeowners have been charged for legal work that was never actually completed.  Alternatively, the legal fees assessed were unreasonably high in light of the kind of work that was actually performed.

Moreover, other courts within this circuit have considered claims similar to those asserted by Plaintiffs here.  *See Carolina Cas. Ins. Co. v. Draper & Goldberg*, 138 Fed. Appx. 542, 546 (4th Cir. 2005) (highlighting two Maryland cases, one filed in the bankruptcy court and captioned as *Weddle v. Option One Mortgage* and the other filed in Maryland state court in Frederick County, Maryland, captioned as *Shorb v. Option One Mortgage* where the debtors claimed that Draper & Goldberg, as legal counsel for the lender and as substitute trustees in the foreclosure action, submitted sham fees for services that were never performed and other fees that were well in excess of the reasonable and customary charges).

### B.  Plaintiffs' Claims Do Not Satisfy The Elements Of Collateral Estoppel.

Collateral estoppel applies in a second action to a determination of fact litigated in the first action, even if the causes of action are different. *MPC, Inc. v. Kenny*, 279 Md. 29, 367 A.2d 486 (Md. 1977).  When there has been a final judgment of a court on the merits in a previous proceeding, collateral estoppel will apply.  *Institutional Mgmt. v. Cutler Computer*, 294 Md. 626, 451 A.2d 1224 (Md. 1982).

A four part test must be satisfied in order for collateral estoppel to be applicable:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
2. Was there a final judgment on the merits?
3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371, 391, 761 A.2d 899, 909 (2000) (citing *Washington Suburban Sanitary Comm'n v. TKU Assocs.*, 281 Md. 1, 18-19, 376 A.2d 505, 514 (1977)).

Furthermore, before collateral estoppel can be invoked, the United States Constitution requires that the plaintiff have a "full and fair opportunity to litigate" the claim in the state

proceeding. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 462, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982).

### 1. Defendant Shapiro & Burson Was Not A Party To The Prior Action.

There are two categories of defendants in this case: (1) the individuals who were the "substitute trustees" in the foreclosure action (the "Substitute Trustee Defendants"); and (2) the law firm, Shapiro & Burson, which performed the legal work incident to the foreclosure action. This latter entity was not a party to the prior action. Nor was Defendant Shapiro & Burson a privy to any party to the prior action. *Res judicata* only "bars a cause of action adjudicated between the same parties or their privies in a prior case." *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997).

In asserting its affirmative defense, Defendant has offered no evidence to prove that it was either a party or the privy of a party. [6] For that reason, the motion to dismiss must be denied as to Shapiro & Burson.

### 2. As Trustees for Both The Lenders And The Debtors, Defendants Were Not "Parties" To The State Court Judgment.

None of the Substitute Trustee Defendants was either a party or a party's "privy," as that term is used in *res judicata* jurisprudence. Each one of them was the trustee for both the

---

[6] Defendant has offered no evidence to show how in fact it was in privity with any party relevant to this dispute. That failure dooms the motion to dismiss as to Shapiro & Burson. Asserting an affirmative defense at the 12(b)(6) phase without providing evidence in support thereof "would sound the death knell for the argument." *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd.*, DKC 09-0100, 2011 U.S. Dist. LEXIS 23627 (D. Md. Mar. 9, 2011). "[A] motion to dismiss filed under Federal Rule of Procedure 12(b)(6). . . generally cannot reach the merits of an affirmative defense . . . But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6). This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

mortgagor and the mortgagee and, therefore, they cannot satisfy Maryland's "same legal right" test under the privity prong. Furthermore, in inflicting the harms alleged, the Substitute Trustee Defendants were acting in their own capacities and not in their capacities as any party's representatives.[7]

The standing of a substitute trustee in a foreclosure action was considered by the United States District Court for the District of Columbia in *Evans v. Chase Manhattan Mortg. Corp.*, where the court was faced with the situation in which a substitute trustee was sued for its own misconduct in a prior action. 2006 U.S. Dist. LEXIS 17069 (D.D.C. Mar. 27, 2006). The court declined to find privity, holding as follows:

> The D.C. Circuit has described "privity" as an "elusive concept" and a term that may mislead more than it enlightens. Privity is the mutual or successive relationship to the same rights of property. In other words, a privy *is a person so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved*. Plaintiff argues that because trustees under a deed of trust must act for the benefit of both parties, borrower as well as lender, the Trustees here cannot possibly have the "same legal right" as Chase with respect to the Property. In support of the contrary proposition that trustees under a deed of trust are ipso facto in privity with the beneficiary of

---

[7] For instance, in the case of Plaintiff Smalley, the appointment of the Substitute Trustee Defendants was made to substitute the appointment of the entity previously designated as the trustee. The appointment was made by a company called Mortgage Electronic Registration Systems, Inc. This company appointed the Substitute Trustee Defendants by its powers as either "the present holder or authorized agent of the holder of the note secured by the aforementioned Deed of Trust." That document does not list the company that Mortgage Electronic Registration Systems may have represented. In light of the standard of review under Rule 12(b)(6) and Defendants' obligation to prove the elements of their affirmative defenses, the Court may not assume the identity of this party. Under *Jones v. SEC*, *supra*, neither Mortgage Electronic Registration Systems nor the company for whom it served as the authorized agent is a party to the instant action. As far as privity is concerned, Defendants have not met their burden to show how the prior adjudication affected the interests of Mortgage Electronic Registration Systems, Inc. Nor have they shown either (a) the identity of that company's principal or (b) how the adjudication of that principal's interests in the prior action compares to the claims at issue here. Most importantly, Plaintiffs' claims stem from injuries caused by the assessment of unearned or excessive fees by the Substitute Trustee Defendants. They assessed these fees in their own capacities not as representatives for the unidentified parties they represented.

the deed of trust, the Trustees cite no case law. Their conclusory, unsupported arguments are insufficient to meet their burden of proof on this issue.

*Id*. (internal citations and quotations omitted).

Maryland follows the same unity of interest test applied by the federal court in *Evans*.

*See Reid v. Wells Fargo Home Mortg*., 2011 U.S. Dist. LEXIS 102713 (D. Md. Sept. 12, 2011)

("[p]rivity in the *res judicata* sense generally involves a person so identified in interest with

another that he represents ***the same legal right***.") (emphasis added).

The *Evans* decision accords with the Southern District of Texas in *Mangum v. America's*

*Servicing Co*., where the court declined to find privity under the "same legal right" test:

> Defendant has failed to show the first requisite element for establishing res judicata—that the parties in both actions are identical. Although Defendant Bank of America attempts to argue that Defendant Gilson [the substitute trustee] was in privity with the parties to the prior bankruptcy proceeding because of his status as substitute trustee, it provides no authority that supports this view. Further, while a substitute trustee is recognized as having a special relationship with both the mortgagee and the mortgagor, ***he is charged with acting impartially towards both***. …. Thus, the doctrine of res judicata does not permit this Court to conclude that no reasonable basis exists for the Mangums to recover against the in-state defendant.

2011 U.S. Dist. LEXIS 129531, 18-19 (S.D. Tex. Oct. 12, 2011) (emphasis added).

The result must be the same here as in *Evans* and *Mangum*, where the Substitute Trustee

Defendants cannot assert that they share a unity of interest with the lender when they owed

countervailing duties to Plaintiffs.  *Webster v. Archer*, 176 Md. 245, 253-54 (Md. 1939)

(explaining the duties of a substitute trustee under Maryland law).  Moreover, Defendants have

not even proffered the identity of the party—or parties—for whom they assert privy status.  This

failure to carry their burden warrants a denial of their motion to dismiss.

### 3. The State Court Judgments Did Not Address The Merits Of Plaintiffs' Claims.

Plaintiffs challenge the propriety of sham legal fees assessed against them based on after-acquired information disclosed by a whistleblower.

The United States Supreme Court has declared as a matter of law that an assessment of attorney fees is not a litigation on the merits of the action to which the fees pertain. *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (U.S. 1988). In *Budinich*, the Court held that it is "indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain. Such an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action." *Id.* at 200.

In reaching this decision, the Court determined that whether an attorney fee award was a final judgment on the merits, the source of the fees (i.e., derived from statute or decisional law) was irrelevant because the Court's decision "should not turn upon the characterization of those fees by the statute or decisional law that authorizes them." *Id.* at 201.

This is consistent with the Court's prior holding in *Radio Station WOW, Inc. v. Johnson*, where the Court was willing to "split the merits," regarding a claim for an accounting. 326 U.S. 120, 126 (1945). In doing so, the Court found the accounting claim to be sufficiently "dissociated" from the merits and that "in effect, such a controversy is a multiple litigation allowing review of the adjudication which is concluded because it is independent of, and unaffected by, another litigation with which it happens to be entangled." *Id.*

The Fourth Circuit has endorsed this position, enforcing the Supreme Court's holding that "a claim for attorney's fees is ***not part of the merits of the action to which the fees pertain***." *Carolina Power & Light Co. v. Dynegy Mktg. & Trade*, 415 F.3d 354, 361 (4th Cir. 2005) (emphasis added).

**C.  The Fee Issue Is Separate From The Underlying Merits.**

Here, Plaintiffs' challenge to the imposition of attorney fees is completely separate from the underlying merits.  For instance, Defendants make much ado about the fact that Plaintiffs do not dispute that they were in default on their mortgages and that they were rightfully subject to a foreclosure.  Without contesting the underlying foreclosure, Plaintiffs challenge the fees that were assessed against them.  As in *Budinich*, the merits of the foreclosure are completely separate from the assessment of the attorney fees.

**D.  The Reasonableness Of The Attorney Fees Was Never Litigated.**

No judicial body actually evaluated the reasonableness of the challenged fees and commissions. Maryland places the burden of proof on the party seeking the fees.  *Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership*, 100 Md. App. 441, 453-54 (Md. Ct. Spec. App. 1994).[8] Defendants have provided no evidence that any of the *Maxima* factors were addressed on their merits in the prior proceedings.

**E.  Plaintiff Smalley Made No Substantive Challenges To The Prior Foreclosure, The Audit Report, Or The Attorney Fees.**

Defendants attempt to argue that Plaintiff Smalley challenged his foreclosure in a manner that would trigger issue or claim preclusion.  This is manifestly not true.  Within the prior

---

[8] In *Maxima*, the Court of Special Appeals articulated, in relevant part, "the detail required and the quantum of information that the prevailing party must provide" to meet his or her burden:

> A fee is not justified by a mere compilation of hours multiplied by fixed hourly rates or bills issued to the client; [] a request for fees must specify the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged; [] it is incumbent upon the party seeking recovery to present detailed records that contain the relevant facts and computations undergirding the computation of charges; [] without such records, the reasonableness, vel non, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence.

*Maxima Corp. v. 6933 Arlington Dev. Ltd. Partnership*, 100 Md. App. 441, 453-454 (Md. Ct. Spec. App. 1994).

foreclosure action, Plaintiff Smalley filed a document entitled "Memorandum of Law – Bank Fraud." *See* Def. Mot. to Dismiss at Ex. 11.  That motion, filed well after the sale occurred, was stricken without comment.  *See* Def. Mot. to Dismiss at Ex. 10.  *Res Judicata* does not activate when a court adjudicates a claim on procedural grounds.  *See Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 119 (4th Cir. 1989).  For the same reasons, collateral estoppel is inapplicable.  *See Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371, 391, 761 A.2d 899, 909 (2000) ("Was there a final judgment on the merits?").

Even still, the document filed by Plaintiff Smalley asserted claims against the lender— not the Defendants herein.  As such, that stricken filing has nothing to do with the merits of this action.

Additionally, Defendants make reference to a collateral action Plaintiff Smalley filed in *Smalley v. Barclays*, CAE-11-01246.  *See* Def. Mot. to Dismiss Ex. 13.  Defendants are not named parties in that lawsuit and the allegations therein have nothing to do with the merits of the instant matter.  More to the point, Defendants have failed to meet their burden to prove that either the stricken "Memorandum of Law – Bank Fraud" or the state court case against his lender has anything to do with this lawsuit.

The law is well-settled that Defendants' arguments are both affirmative defenses.  *See* Fed. R. Civ. P. Rule 8(c) (listing *res judicata* as an affirmative defense).  For these two affirmative defenses, Defendants bear not only the burden of proof, but also the burden of production.  *See Fifth Third Bank ex rel. Trust Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005) (explaining the burden that a defendant must bear when asserting an affirmative defense); *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1133-1134 (10th Cir. 2007) (same).  As the Honorable Chief Judge Chasanow of this Court has previously held, asserting an affirmative

14

defense at the 12(b)(6) phase without providing evidence in support thereof "would sound the death knell for the argument." *Charter Oak Fire Ins. Co. v. Am. Capital, Ltd*., DKC 09-0100, 2011 U.S. Dist. LEXIS 23627 (D. Md. Mar. 9, 2011).

For this failure to carry their burdens of production and persuasion, Defendants' Motion to Dismiss must be denied.

### F.   Plaintiff Ball's Challenges To The Prior Foreclosure Were Aimed At The Validity Of The Sale Itself And Not To The Assessment Of Attorney Fees As In This Case.

Plaintiff Ball's first appearance in the foreclosure action occurred more than thirty days after the sale was ratified.  At that time, she sought leave to file a "belated appeal," Def. Mot. to Dismiss Ex. 2, which the circuit court denied.  Plaintiff Ball then appealed the denial of that motion.  The Court of Special Appeals subsequently dismissed the appeal on the grounds that the prior motion was untimely.  *See* Def. Mot. to Dismiss Ex. 3.

After the audit report was released, Plaintiff Ball filed a document she entitled "Motion for Exception of the Audit."  *See* Def. Mot. to Dismiss Ex. 5.  The clear purpose of that motion, as is stated in its plain text, was for a detailed accounting of the audit.  *Id*.  Nowhere in that document did Plaintiff actually contest any fees assessed.  Nor did she make any allegations of any impropriety of any kind.  Rather, she simply sought "a detailed Accounting of the Auditors Account 'A.'"  *Id*.  She then listed five categories on which she sought details for the break-down of fees.

Without any consideration of that request, the audit was ratified.  Plaintiff Ball subsequently filed in the Circuit Court three motions: Motion to Nullify the Judgment, Motion to Recuse, and Motion to Reopen Case Due to Mistake of Court.  Plaintiff Ball appealed the ratification of the audit report, which was dismissed because the audit report was not yet a final order.  Plaintiff Ball's challenges to the propriety of the sale were dismissed on *res judicata*

15

grounds.  As far as the audit report was concerned, the Court of Special Appeals remanded the

case for consideration of Plaintiff's unheard motions.

On March 4, 2011, the Circuit Court held a hearing, reviewed and denied Plaintiff's

outstanding motions, and ratified the audit report.  Plaintiff Ball, acting *pro se*, subsequently filed

a series of procedural motions, all of which appeared to attack the validity of the foreclosure sale

itself.  When those motions were denied, Plaintiff Ball filed additional appeals, which are

currently pending.

While Plaintiff did file post-ratification motions, there is no evidence that any of those

motions were disposed of on their merits.  Without additional reasoning from the trial court, it is

just as likely that they were dismissed on a procedural basis as on substantive grounds.  As the

Fourth Circuit stated in *Pizlo v. Bethlehem Steel Corp.*, "[w]hen a dismissal is based on two

determinations, one of which would not render the judgment a bar to another action on the same

claim, the dismissal should not operate as a bar." 884 F.2d 116, 119 (4th Cir. Md. 1989) (citing

Restatement (Second) of Judgments § 20, Comment e and Illustration 4 at 173).  Moreover, none

of Plaintiff Ball's motions addressed the injuries or claims alleged herein.

### G.  Even If The Fee Issue Was On The Merits, The Foreclosure Action Is Not Binding On Matters Of Personal Liability, Such As The Attorney Fees And Commissions At Issue.

The order ratifying the sale is not binding as to personal liability to pay the underlying

debt, which is the subject of the current dispute.  *See Bainder v. Bldg. & Loan Assn.*, 161 Md.

597 (1932).  In *Bainder*, the Court of Appeals declared that a foreclosure proceeding "is against

the mortgaged property alone." *Id.* at 603.  The Court continued:

> The effect of that decree [ratifying the foreclosure sale] was to establish the
> mortgage debt as a valid and subsisting debt enforceable against the mortgaged
> property, but not to establish the personal liability of Bainder for the payment of
> that debt. That question cannot arise unless and until the mortgagee, by a petition
> or motion for a decree *in personam* or other appropriate proceeding attempts to

16

establish that liability, and while the fact, if it is a fact, that the mortgagee discharged Bainder from any personal liability for the debt would be relevant in such a proceeding, it is not relevant in a proceeding to distribute the proceeds of a sale of the mortgaged property after the sale has been finally ratified. For the mortgage debt and the personal liability of the mortgagors for the payment of that debt are different things . . . .

*Id.* at 604.

In interpreting the *Bainder* decision, the court in *Fairfax Sav., F.S.B. v. Kris Jen Ltd.*

*P'ship*, stated:

Consequently, it appears that under the rules recognized in the Restatements, and viewing the judgment solely as in rem, the Plaintiffs could relitigate, in the context of their present claims for damages, whether the deed of trust by Kris Jen was in default when Fairfax foreclosed, even though the existence of a default is a condition precedent to commencing a mortgage foreclosure in Maryland.

338 Md. 1, 20-21 (Md. 1995).

Defendants' strong reliance on *Jones v. HSBC Bank USA, N.A.*, is not helpful to their

case. 2011 U.S. App. LEXIS 17886 (4th Cir. Aug. 25, 2011). There, the Fourth Circuit

highlighted the analysis of the Court of Appeals in *Fairfax Sav.*, where the court stated that no

claim should be relitigated that would "in effect, nullify the original foreclosure judgment."

*Jones*, 2011 U.S. App. LEXIS 17886 at n. 3. In the case *sub judice*, Plaintiffs' challenge to the

propriety of the legal fees will not disturb the finality of the foreclosure judgment itself.

As the Honorable Judge Bennett wrote for this Court in *Poku v. FDIC*,

Furthermore, Atta Poku has clearly not been given a full and fair opportunity to be heard on the issues he raises in this case. He has been diligent in appealing the foreclosure proceeding decided against him, yet he has received no substantive review of that decision as a result of his appeals being dismissed as moot because of a procedural failure. The propriety of the foreclosure proceeding is not before this Court, and Atta Poku's claims are sufficiently differentiated from that action so as to foreclose preclusion of his case on collateral estoppel grounds. This Court is mindful of the overriding principle of the collateral estoppel doctrine, that the courts should protect a litigant's right to a full and fair opportunity to litigate his claims. Collateral estoppel, therefore, cannot bar the claims that Atta Poku now brings.

2011 U.S. Dist. LEXIS 8699, 22-23 (D. Md. Jan. 31, 2011) (internal citations omitted).

As the Court of Appeals stated in *Walde v. Capital Mortg. Inv.*, "[i]t is, of course, settled that the ratification of a foreclosure sale does finally determine certain issues against a mortgagor." 286 Md. 343, 347-348 (Md. 1979). *See, e.g.*, *Hersh v. Allnutt*, 252 Md. 513, 519, 250 A.2d 629 (1969); *Ed Jacobsen, Jr., Inc. v. Barrick*, 252 Md. 507, 511, 250 A.2d 646 (1969); *Gerber v. Karr*, 231 Md. 180, 186, 189 A.2d 353 (1963); *Bachrach v. United Cooperative*, 181 Md. 315, 322, 29 A.2d 822 (1943); *Albert v. Hamilton*, 76 Md. 304, 309-310, 25 A. 341 (1892).

### 1.   The Causes Of Action Are Not Identical.

To determine similarity in causes of action, Maryland courts follow the "transactional test." As stated in *Anyanwutaku v. Fleet Mortg. Grp., Inc.*,:

> Under this test, claims are considered a part of the same cause of action when they arise out of the same transaction or series of transactions. In determining whether the causes of action stem from the same transaction or series of connected transactions, courts consider such pragmatic factors as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. Claims may also arise out of the same transaction or series of transactions even if they involve different harms or different theories or measures of relief.

85 F. Supp. 2d 566, 571 (D. Md. 2000) (citing *deLeon v. Slear*, 328 Md. 569, 616 A.2d 380, 389-90 (Md. 1992)).

Here, the challenged transaction is Defendants' assessment of fees ***after*** the foreclosure was completed. Neither Plaintiff could have even known about these fees until after the prior adjudication had ended, let alone challenge their assessment at the time period posited by Defendants.

**H.  In The Case Of Plaintiff Ball, The Court's Denial Of The Requested Accounting Demonstrates Why These Claims Are Not Identical.**

It is important to note that Plaintiff Ball specifically requested an itemization of the attorney fees, the propriety of which she now challenges.  Plaintiff never actually received the accounting she requested.  Furthermore, the Circuit Court's denial of this request provides absolutely no reasoning to explain its denial of the motion.  Without this information, the Defendants cannot sustain their burden to prove that the motion was decided on the merits.

In addition, without the knowledge Plaintiff later received from the whistleblower who was a former employee of Defendant Shapiro & Burson, reviewing an itemization of the attorney fees would have been the only other way for Plaintiff to have brought any kind of counterclaim or defense in the prior action—assuming that she would have been required to even bring such arguments at the audit phase.  Because she never received the itemization of attorney fees, she was deprived of the information necessary to bring this claim.  As a practical matter under *Anyanwutaku*, it defies logic that the Defendants can inflate their legal fees, withhold an accounting of those fees, and then assert *res judicata* as to the foreclosure judgment when a consumer later challenges the reasonableness of those fees assessed ***after*** the final foreclosure judgment was entered.

Further, Defendants have failed to meet their burden to show a transactional nexus between the fee issue asserted herein and the litigation filed in the state court matter.

19

III.    **Plaintiffs' Claims Present Several Exceptions To Issue/Claim Preclusion.**

A.  **Plaintiffs' Claims Are Not Precluded Where They Are Based On Facts Unavailable To Them Only After The Applicable Time Period Passed.**

It was not until Mr. Portillo came forward that Plaintiffs could have known that the fees assessed against them were either excessive or entirely unearned.  In *Singer v. Steven Kokes, Inc.*, the Maryland Court of Special Appeals considered this exact proposition:

> Although the general rule is that a party cannot split a cause of action, an exception exists where the party had no knowledge of the facts that form the basis of the latter suit at the time. This exception is inapplicable where the means of obtaining such knowledge existed and the knowledge could have been obtained with ordinary diligence. Hence, it would be immaterial that the Singers lacked knowledge of the defects, if such knowledge was in their means and could have been obtained through the exercise of ordinary diligence.

39 Md. App. 180, 184 (Md. Ct. Spec. App. 1978), citing *Macon & Augusta R.R. Co. v. Garrard*, 54 Ga. 327, 329 (1874); *Wheeler Savings Bank v. Tracey*, 141 Mo. 252, 42 S.W. 946, 947 (1897); *Gaither Corp. v. Skinner*, 241 N.C. 532, 85 S.E.2d 909, 912 (1955); *Holland v. Spear & Co.*, 193 Misc. 524, 83 N.Y.S.2d 21, 25-26 (1948); *Badger v. Badger*, 69 Utah 293, 254 P. 784, 787 (1927) (internal citations omitted).

B.  **Res Judicata Only Bars Claims That Challenge The Validity Of The Sale.**

In Maryland, the final ratification of a foreclosure sale is only considered "*res judicata* as to the validity of such sale, except in case of fraud or illegality."  *Manigan v. Burson*, 160 Md. App. 114, 120, 862 A.2d 1037, 1041 (Md. Ct. Spec. App. 2004).  Here, it is undisputable that none of Plaintiffs' claims challenge the validity of the sale.  Nor do Plaintiffs' claims seek to undo the foreclosure sale or overturn the Circuit Court's decision.  Rather, Plaintiffs challenge the propriety of the fees assessed against them after the sale was ratified.  As such, Plaintiffs' claims do not mount a collateral attack to the foreclosure itself and ratification of the sale cannot bar a dispute about the subsequent fees assessed.

20

**C.  Res Judicata Is Inapplicable In Instances Of Fraud.**

Even a final judgment is susceptible to subsequent challenge if extrinsic fraud is

discovered.  *Manigan v. Burson*, 160 Md. App. 114, 120, 862 A.2d 1037, 1041 (Md. Ct. Spec.

App. 2004).  Extrinsic fraud concerns fraud that occurs outside of, collateral to, or before any

adversarial hearing and which thus prevents an adversarial trial from occurring at all.  *Jones v.

Rosenberg*, 178 Md. App. 54, 73, 940 A.2d 1109, 1119 (2008).

"In its core meaning, 'extrinsic' fraud meant fraud that induced a party to default or to

consent to judgment against him. . . ." *Green v. Ford Motor Credit Co.*, 152 Md. App. 32, 50

(Md. Ct. Spec. App. 2003).  The Complaint specifically alleges that neither Plaintiff challenged

the fees assessed against them because of Defendants' fraud scheme that led Plaintiffs to believe

that the fees were properly earned.  *See* Compl. at ¶ 96 ("Inasmuch as none of the Plaintiffs and

none of the class members challenged the imposition of the commission or legal fees, they relied

on Defendants' collective misrepresentations to their detriment.").

Furthermore, while Plaintiffs do not challenge the validity of the sales themselves,

Maryland law does not give preclusive effect to ratifications where, as here, fraud has been

discovered post-ratification.  As the Court of Appeals has held, "[T]he law is firmly established

in Maryland that the final ratification of the sale of property in foreclosure proceedings is *res

judicata* as to the validity of such sale, except in case of fraud or illegality . . . . However, a court

of equity has the power to set aside a foreclosure sale upon an original bill for fraud filed by the

mortgagor or any other party interested, where fraud has been discovered after the ratification of

the sale, even after the decree has become enrolled." *Bachrach v. United Cooperative*, 181 Md.

315, 320, 29 A. 2d 822 (Md. 1943); *see also Geisey v. Holberg*, 185 Md. 642, 45 A. 2d 735

(1946); *Hersh v. Allnutt*, 252 Md. 513, 519 (Md. 1969); *Gerber v. Karr*, 231 Md. 180, 189 A. 2d

353 (Md. 1963). Miller's Equity Procedure, §§ 484-85.

This case concerns fraud discovered post-ratification.  In neither Plaintiffs' cases were those issues actually litigated on their merits.  In the case of Plaintiff Smalley, he only filed one motion post-sale, which was stricken.  There was no opinion issued on this subject from which this Court could hold that Mr. Smalley's motion was addressed on its merits.  Furthermore, Mr. Smalley's post-sale motion did not address the after-discovered fraud at issue in the subject dispute.  The same is true for Plaintiff Ball's post-sale motions, which were dismissed on grounds not subject to issue or claim preclusion.  *Pizlo v. Bethlehem Steel Corp*., 884 F.2d 116, 119 (4th Cir. Md. 1989) ("When a dismissal is based on two determinations, one of which would not render the judgment a bar to another action on the same claim, the dismissal should not operate as a bar."). (citing Restatement (Second) of Judgments § 20, Comment e and Illustration 4 at 173).

### D.  Neither Issue Nor Claim Preclusion Attached Because Both Of The Opinions Below Resulted In Judgments By Default.

Defendants argue that the foreclosure judgment itself bars litigation of the attorney fees at issue.  However, neither Plaintiffs challenged their foreclosures before the Circuit Courts entered judgments by default.  As such, neither judgment is to be given preclusive effect.  As the Supreme Court has declared: an issue has not been actually litigated "'[i]n the case of a judgment entered by confession, consent, or default.'" *Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement (Second) of Judgments § 27, cmt. e (1982)).

Defendants' only recourse is to argue that Plaintiffs had an obligation to bring the instant causes of action as counterclaims in their foreclosure actions and that litigation of those claims now would nullify the prior judgments.  This very Court held in *Hawkins v. Citicorp Credit Servs*. that "since counterclaims are permissive rather than mandatory under Maryland law, where a defendant could have brought a counterclaim in the first action but failed to do so, he is

not precluded from bringing that claim in a subsequent action unless successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." 665 F. Supp. 2d 518, 525 (D. Md. 2009) (citations and quotations omitted).  Here, successful adjudication of Plaintiffs' claims will not nullify the judgment below.  None of Plaintiffs' claims could even be construed as challenging the finality or soundness of the foreclosures themselves.  Rather, Plaintiffs' claims did not arise until Defendants engaged in unlawful misconduct in carrying out their debt collection activities.[9]

## IV.  Plaintiffs Have Sufficiently Stated Claims For Relief Under The FHA.

Defendant Shapiro & Burson argues that Plaintiffs have failed to state claims for relief under the federal Fair Housing Act ("FHA").  Contrary to Defendant's proposition, Plaintiffs have sufficiently alleged a theory of disparate impact under the FHA, which makes it unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b).

In interpreting this provision, the United States Department for Housing and Urban Development ("HUD") has issued specific implementing regulations that state in pertinent part:

> It shall be unlawful, because of race, color, religion, sex, handicap, familial status, or national origin, to engage in any conduct relating to the provision of housing or of services and facilities in connection *therewith that otherwise makes unavailable or denies dwellings to persons*.

24 C.F.R. § 100.70(b) (emphasis added).

The HUD Regulations further state that it is illegal to do the following:

---

[9] Unlike the case in *Sheahy v. Primus Auto. Fin. Serv. Inc.*, Plaintiffs neither directly nor indirectly seek to challenge the foreclosure judgments. 284 F. Supp. 2d at 279-80.  Nor do Plaintiffs seek damages that would nullify the foreclosures themselves.  Rather, Plaintiffs' damages model for the fraud and related claims arise from the assessment of legal fees that were either unearned or unreasonable in light of the work Defendants performed.

Engage in any conduct relating to the provision of housing *which otherwise*
*makes unavailable or denies dwellings to persons because of race*, color,
religion, sex, handicap, familial status, or national origin.

24 C.F.R. § 100.50(b)(3) (emphasis added).

To properly plead a disparate impact claim, a plaintiff must allege (1) a specific

outwardly neutral practice or policy, (2) a significantly adverse or disparate impact on persons of

a particular type, and (3) facts raising a sufficient inference of causation. *Lapid-Laurel, L.L.C. v.*

*Zoning Bd. of Adjustment of the Twp. of Scotch Plains*, 284 F.3d 442, 466-67 (3d Cir. 2002)

(citing *Gamble v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997)).

Plaintiffs have more than adequately pleaded elements to meet these three criteria.

Plaintiffs have alleged the requisite outwardly neutral practices and policies.  *See* Compl. at ¶

141 ("Shapiro & Burson routinely engages in foreclosures without any personnel—let alone a

licensed attorney—actually reviewing essential mortgage information to verify the integrity of

the foreclosure process"); Compl. at ¶ 30 ("Mr. Portillo details an elaborate robo-signing

operation whereby each Defendant financially benefitted from fees and commissions in carrying

out foreclosures tainted by fraud.").[10]  These practices result in the imposition of unearned fees

that are passed on to the members of proposed subclass.

Moreover, Plaintiffs have alleged the element of disparate impact.  For instance,

"Because of their race, Plaintiffs were more likely to fall victim to Defendant Shapiro &

Burson's unlawful robo-signing operation." Compl. at ¶ 157.  "Defendant Shapiro & Burson's

illegal robo-signing operation has had a disproportionate impact on Plaintiffs as African-

---

[10] The Complaint is replete with allegations supporting these claims.  *See, e.g.* Compl. at ¶ 138
("Indeed, even though a basic pre-requisite to a foreclosure filing is to determine whether a client
has a right to foreclose, Shapiro & Burson's policies and practices did not require documentation
from lenders proving ownership of the notes prior to commencing the foreclosure process.")
(referencing Ex. C to the Complaint).

American residents of Maryland." Compl. at ¶ 144.  "In delivering speedy foreclosures that cut corners and break the rules, Shapiro & Burson breaks the law in a way that disparately impacts the proposed subclass in that unearned fees and commissions are passed on to them and in that they lose their homes to foreclosures that fail to comply with the law."  Compl. at ¶ 143.  The Complaint directly links the high density of African-Americans in Prince George's County, which is especially hard hit by the foreclosure crisis, to the robo-signing operation implemented by the Defendants.  *See* Compl. at ¶ 151.[11]

Moreover, Plaintiffs have alleged facts that raise a "sufficient inference of causation" as required by *Lapid-Laurel* and *Gamble*.  *See* Compl. at ¶ 156 ("There is a direct correlation between race and foreclosure in the state of Maryland."); Compl. at ¶ 157 ("Because of their race, Plaintiffs were more likely to fall victim to Defendant Shapiro & Burson's unlawful robo-signing operation.").  While Plaintiffs currently lack the statistical evidence to demonstrate this connection, which would be required at trial or at summary judgment, they have sufficiently alleged anecdotal evidence to permit their claims to pass the 12(b)(6) phase.

Plaintiffs have more than adequately met their burden to allege disparate impact claims under the FHA.  For this reason, Defendant's motion must be denied.

---

[11] Defendants attempt to recast Plaintiffs' allegations by arguing that the fact that Plaintiffs received subprime loans is the causal connection to their injuries.  This is not so.  Plaintiffs' allegations that discuss subprime lending merely provide background to explain why African-Americans in Maryland are more likely to undergo foreclosure than similarly situated whites. For that reason, it heightens the likelihood that they will experience the Defendants' fraud schemes.  However, this is not Plaintiffs' only argument that there is a connection between Defendants' practices and the disparate impact felt by African-Americans.  Plaintiffs' independent investigation provides the basis for their assertion that "Defendant Shapiro & Burson's illegal robo-signing operation has had a disproportionate impact on Plaintiffs as African-American residents of Maryland."  Compl. at ¶ 144.  At this point in the litigation, only statistical evidence would be more specific and, at the 12(b)(6) phase, such evidence is not only unavailable, but also unnecessary.

**V.  The Statute of Limitations Does Not Bar Plaintiff's Claims Under the FHA Because She Has Asserted Theories of Disparate Impact Discrimination.**

All of the Defendants have moved to dismiss based on the applicable Statutes of Limitations.  However, Defendants' statute of limitations arguments are without merit in light of the Supreme Court's holding in *Havens Realty*, *infra*, and the Critical Mass Doctrine. Defendants argue that Plaintiff Ball's claims are barred by the two- year statute of limitations under the FHA. *See* 42 U.S.C. § 3613(a)(1)(A) (two-year statute of limitations under the FHA).  However, Plaintiff's claims arise under a theory of disparate impact discrimination—not simply a single act of discrimination.  As such, the Supreme Court has previously held that the Continuing Violation Doctrine tolls the limitations periods in question.

In *Havens Realty Corporation v. Coleman*, the Supreme Court held that the Continuing Violation Doctrine applied to allegations that a defendant was engaged in a practice of discrimination when it turned down apartment rental applications from African- Americans, and that therefore the statute of limitations under the FHA did not bar claims based on four incidents that occurred outside the limitations period. 455 U.S. 363, 380-81 (1982). The Court explained that a continuing violation of the FHA "should be treated differently from one discrete act of discrimination. Statutes of limitations . . . are intended to keep stale claims out of the courts. Where the challenged violation is a continuing one, the staleness concern disappears." *Id*. at 380 (citations omitted).  A "wooden" application of a statute of limitations that "ignores the continuing nature of the alleged violation" would only "undermine[] the broad remedial intent of Congress embodied in the Act." *Id*.  As a result, the Court concluded that where, as in this case, "a plaintiff, pursuant to the Fair Housing Act, challenges *not just one incident* of conduct violative of the Act, but *an unlawful practice* that continues into the limitations period, the complaint is timely when it is filed within [the statutory limit] of the last asserted occurrence of

26

that practice." *Id.* at 380-81 (footnote omitted) (emphases added). Thus, Plaintiff's claims are timely under *Havens*.

The Supreme Court later held that the continuing violation doctrine applies to hostile work environment claims because "the entire hostile work environment encompasses a single unlawful employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-18 (2002). The allegations in this case are "more analogous to the hostile work environment claims than discrete discriminatory acts. . . . The ongoing discrimination plaintiffs allege could only manifest itself after *a critical mass of similarly situated people experienced it*, so as to bring an over-arching pattern to light." *Davis v. Gen. Motors Acceptance Corp.*, 406 F. Supp. 2d 698, 705-06 (N.D. Miss. 2005) (applying continuing violation doctrine to Equal Credit Opportunity Act claims alleging disparate impact from racially discriminatory mark-ups on auto loans) (emphasis added).

Although each instance of fee assessments could be seen as a separate violation of the FHA, this does not mean that the continuing violation doctrine is inapplicable. As the Northern District of California persuasively explained in a recent case:

> [A] single incident of "steering" constitutes an actionable violation of the FHA, just as the construction of each complex constitutes an actionable violation of the FHA. That more than one incident of steering occurred only demonstrates a pattern of such violations, not that each incident, standing on its own, is not a violation of the FHA. Defendants have offered no intelligible argument as to why the reasoning of *Havens* is not applicable to an alleged pattern or practice of construction-based violations of the FHA.

*Nat'l Fair Housing Alliance v. A.G. Spanos Constr., Inc.,* 542 F. Supp. 2d 1054 (N.D. Cal. 2008).

Further, in a case with allegations analogous to those of Plaintiff, another court applied the Continuing Violation Doctrine to toll the limitations period. *See Ramirez v. GreenPoint*

*Mortg. Funding, Inc.*, 633 F. Supp. 2d 922, 930 (N.D. Cal. 2008).  In *Ramirez*, the court

concluded that where a pattern of practices was alleged, the limitations period did not expire

until the practices ceased.  *Id.*  The *Ramirez* court concluded that, just like hostile work

environment claims, "'the ongoing discrimination plaintiffs allege could only manifest itself after

a ***critical mass of similarly situated people experienced it***, so as to bring an over-arching pattern

to light.'" *Ramirez*, 633 F. Supp. 2d at 930.  As in *Davis* and *Ramirez*, Plaintiff here could not

have known of the disparate impact cause of action until a critical mass of similarly situated

individuals brought the over-arching pattern to light.

Moreover, there is no information as to when the discriminatory practices last occurred—

or whether they have stopped at all. As such, Defendants cannot even avail themselves of the

limitations defense.  As the Honorable Chief Judge Chasanow of this Court held in *Ragland v.*

*A.W. Indus.*, where a complaint alleges certain facts that would trigger the limitations period at

different times, the limitations defense is unavailable at the 12(b)(6) stage: "Because it is not

clear from the face of the complaint whether the statute of limitations defense even applies here,

Defendant's motion to dismiss based on the statute of limitations must be denied.[12]" No. DKC

2008-1817, 2009 U.S. Dist. LEXIS 71889, at *22 (D. Md. Aug. 13, 2009). The *Ragland* decision

applied the principle that dismissal is only proper where "the face of the complaint ***clearly***

reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85

F.3d 178, 181 (4th Cir. 1996) (emphasis added).

Here, Defendants' asserted defense is not clearly available from the face of the

Complaint—particularly in light of the fact that Plaintiffs' claims do not arise from one incident

---

[12] Indeed, Mr. Smalley's FHA claim accrued within the applicable limitations period, which
Defendant does not dispute.  In failing to move to dismiss Mr. Smalley's claim on this basis,
Defendant at least tacitly agrees.

of discriminatory conduct, but rather of a pattern of practices that have caused a disparate impact on members of a protected class and because Mr. Smalley's FHA claim accrued within the applicable limitations period.  Additionally, Paragraph 30 of the Complaint demonstrates a pattern of conduct that has had a disparate impact on members of the protected class.  As in *Ragland*, it is unknown when the last instance of discriminatory conduct took place and whether the defense is even available to the Defendants.

As the statute of limitations is neither applicable nor satisfied, Defendant's Motions to Dismiss on this basis should be denied.

## VI.   Plaintiffs' FDCPA Claims Are Not Time-Barred.

Defendants erroneously assert that the statute of limitations for Plaintiff Ball's FDCPA claim was triggered on the day she became aware of the Lost Note Affidavit referred to in their Motion to Dismiss.  They also assert that Plaintiff Smalley's limitations period began when he filed the "Memorandum of Law—Bank Fraud.[13]"  Neither of these dates are the appropriate time period for triggering the limitations period under the FDCPA, which is subject to a one-year limitations period for civil liability.  *See* 15 U.S.C. § 1692k(d).

Plaintiffs assert the relevant time period began when the Plaintiffs knew or could have known of the source of their injury.  As other federal courts have held, the federal Discovery Rules applies to the FDCPA.  *See, e.g. Mangum v. Action Collection Serv., Inc*., 575 F.3d 935, 940 (9th Cir. 2009).  In *Mangum*, the Ninth Circuit succinctly described the rule: "a limitations period begins to run when the plaintiff knows or has reason to know of the ***injury*** which is the basis of the action."  *Id*. (emphasis added).

---

[13] The memorandum concerning "bank fraud" argued against fraud committed by the lender, not the Defendants herein.

In this case, Plaintiffs' articulated injury is the assessment of legal fees by Defendant Shapiro & Burson based on a pattern of practices that amount to unconscionable debt collection practices. *See* Compl. at ¶ 129 ("Defendant Shapiro & Burson's illegal robo-signing operation amounts to a pattern of unfair and unconscionable debt collection practices that have affected consumers on a class-wide basis in violation of § 1692f of the federal Fair Debt Collection Practices Act."). These practices include charging consumers for legal services that are based on rampant forgery, non-lawyers performing legal tasks with no attorney oversight, computerized and/or automated foreclosure filings with no attorney oversight, and a lack of document verification. As a result, thousands of Maryland consumers have been overcharged by Defendant.

Under the federal discovery rule, the question is when either Plaintiff could have discovered their injury. In this case, Plaintiffs posit that date could not have been any earlier than the date on which Mr. Jose Portillo's information was made public. *See* Ex. C. to Compl. This was in March of 2011. As Plaintiffs' FDCPA claims were filed in September of 2011, their claims are timely.

## VII.   None Of Plaintiff Ball's State Law Claims Are Time-Barred.

Defendants' statute of limitations argument as to Plaintiff Ball's common law claims is similarly without merit. Defendants assert that a three year limitations period applies to Ms. Ball's state law claims for Fraud, Conspiracy, and violations of the Maryland Consumer Protection Act. Plaintiffs concur that a three year period applies, but do not agree that Defendants' asserted event establishes the commencement of the limitations period. Defendants erroneously assert that the limitations period began on the date that they filed the Lost Note Affidavit in August of 2008.

First, Plaintiff's state law claims were included in her original complaint, which was filed with this Court on April 7, 2011.  As such, under Defendants' asserted time-table, her claims were timely filed.

Second, the filing of the Lost Note Affidavit does not trigger the limitations period. Rather, the statute of limitations begins to run when a claim accrues and when its elements are present, so that the plaintiff could maintain a successful suit.  *Hendel v. World Plan Executive Council*, 705 A.2d 656, 660-61 (D.C. 1997).  In *Doe v. District of Columbia Comm'n on Human Rights*, 624 A.2d 440 (D.C. 1993), the District of Columbia Court of Appeals explained that the limitations period does not begin until all of the elements of a claim are present: "a statute of limitation begins to run at the time the right to maintain the action accrues, i.e., from the time that all the elements of a cause of action have come into existence." *Id*. at 444.  But the Defendants have not met their burden to show when these elements accrued.

Third, the equitable tolling doctrine bars Defendants' asserted defense.  The test for determining the applicability of the equitable tolling doctrine in instances of fraudulent concealment is explained in *In re Cmty. Bank of N. Va.*:

(1)  the defendant actively misled the plaintiff respecting the plaintiff's claim;
(2)  the defendant prevented the plaintiff from recognizing the validity of the claim within the limitations period; and
(3)  the plaintiff used reasonable diligence in uncovering the relevant facts that form the basis of a claim.

467 F. Supp. 2d 466, 478-79 (W.D. Pa. 2006).  Here, it is undisputed that Plaintiff Ball actively sought an accounting of Defendants' attorney fees.  Additionally, the Complaint alleges an elaborate scheme by which Defendants actively misled Plaintiff with respect to her fraud claims pertaining to the imposition of unearned attorney fees.  Furthermore, Defendants actively concealed the nature of their fraud scheme from Plaintiff Ball.  Given the efforts she has used to

31

fight the validity of her foreclosure, she used diligence in trying to uncover relevant facts that would form the basis of her claim.

For these reasons, Defendant's motion to dismiss based on the statute of limitations must be denied.

**VIII.   Plaintiffs Have Stated A Claim Under The Federal RICO Statute.**

Defendants contend that Plaintiffs cannot articulate a fraud claim because they have not asserted the element of damages.  In support of this argument, they assert Plaintiffs have not alleged that that they actually paid any of the challenged legal fees and commissions, relying on *Gourdine v. Crews*, 405 Md. 722, 758 (Md. 2008).  Defendants' interpretation of *Gourdine* is incorrect. The Maryland Court of Appeals does not require a plaintiff to plead pecuniary loss, as Defendants suggest.  Rather, a plaintiff need only plead "that the plaintiff suffered ***compensable injury*** resulting from the misrepresentation." *Gourdine v. Crews*, 405 Md. 722, 758 (Md. 2008). Defendants have offered no support for their proposition that compensable injury requires a showing of pecuniary loss.

Furthermore, Plaintiffs have specifically articulated that they have suffered a compensable injury resulting directly from Defendants' misrepresentations.  *See* Compl. at ¶ 97 ("Each Plaintiff and each member of the class has suffered actual damages in the amount of the legal fee obtained by Defendants and the commission and/or other fees obtained by Defendants and passed on to Plaintiffs and the members of the class.").

In addition, Plaintiffs have pleaded that the Defendants' conduct was intentional, which entitles them to emotional damages if proven at trial.  Upon proof of intentional misrepresentation, a plaintiff may recover "emotional damages that are the natural and proximate result" of the defendants' conduct. *See Kilduff v. Adams, Inc*., 593 A.2d 478, 484 (Conn. 1991); see also *Kneip v. Unitedbank-Victoria*, 734 S.W.2d 130, 136 (Tex. App. 1987) (permitting

32

recovery in tort for emotional damages which result "directly, naturally and proximately from fraud"); *Holcombe v. Whitaker*, 294 Ala. 430, 318 So. 2d 289, 292-93 (Ala. 1975) (recovery, including emotional damages, permitted for the "ordinary, natural and proximate consequences" of willful tortious action).

Applying these principles, the District of Columbia Court of Appeals in *Osbourne v. Capital City Mortgage Corp*. permitted a plaintiff to proceed on a claim for emotional damages where intentional misrepresentation was alleged in the complaint: "Thus if the Osbournes can prove intentional misrepresentation by Capital City, as alleged in the complaint, it is not unfair to permit them to recover for any emotional harm that may have occurred as a result of Capital City's actions." 667 A.2d 1321, 1328 (D.C. 1995).

Moreover, contrary to Defendants' argument, Plaintiffs have in fact alleged that the fees "were passed on to each Plaintiff and each member of the class."  *See* Compl. at ¶ 95 ("Defendants made these misrepresentations for the purpose of obtaining unearned fees from each Plaintiff and each member of the class and for the purpose of obtaining commissions based on fraudulently conducted foreclosure sales, which such ***illegitimate commissions were passed on to each Plaintiff*** and each member of the class.") (emphasis added).  These fees comprise a very real debt that the Plaintiffs now owe, including any potential deficiencies alluded to in Defendants' Motion.  *Id.*

## IX. Plaintiffs Have Stated A Claim For Fraud, Conspiracy, and The Maryland Consumer Protection Act.

Plaintiffs have sufficiently stated a claim for fraud, which requires that a plaintiff show:

(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Maryland Envt Trust v. Gaynor*, 370 Md. 89, 97, 803 A.2d 512 (2002); *VF Corp. v. Wrexham Aviation*, 350 Md. 693, 703, 715 A.2d 188, 192-93 (1998); *Nails v. S & R*, 334 Md. 398, 415, 639 A.2d 660, 668 (1994).[14]   Under Rule 9(b) of the Federal Rules of Civil Procedure, Plaintiffs have a heightened pleading obligation:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R.Civ. P. Rule 9(b).

Here, Plaintiffs have met and exceeded their pleading obligations. In their Complaint, Plaintiffs allege a fraud scheme by which the Substitute Trustee Defendants and Defendant Shapiro & Burson conspired to charge Plaintiffs and the members of the proposed class legal fees and commissions that were either excessive or entirely unearned because of the pattern of fraudulent activity alleged therein.  As a result, the fraud scheme alleged is not so much about what the Defendants did, but rather what they did not do.  For their omissions, as opposed to their acts, their fees were inflated, excessive, unreasonable, or entirely unearned.[15]

---

[14] Defendants move to dismiss Plaintiffs' claim for conspiracy to commit fraud on the grounds that no underlying tort occurred.  For the reasons articulated herein, Plaintiffs' underlying tort is valid and, as such, the conspiracy claim has merit.

[15] The Complaint shows that the legal fees furnished to Plaintiffs in the initial Statement of Debt and Audit Reports were false, deceptive, and misleading in violation of § 13-303(4), § 13-301(1), § 13-301(3) and § 13-301(9) of the Maryland Consumer Protection Act.  Further, Plaintiffs have sufficiently articulated reliance by failing to challenge the fees. *See* Compl. at ¶ 96.  But for Defendants' fraud scheme, Plaintiffs would have known the true nature of the fees assessed and could have challenged them.  In fact, in Plaintiff Ball's case, she specifically asked for an accounting of those fees, which Defendants failed to provide.  Defendants characterize that request as a direct challenge to the fees, which is not quite accurate.  Without that accounting, she had absolutely no grounds to challenge the basis of the fees.

As shown below, the Complaint explains which practices caused impermissible fees on a class-wide basis. The two examples of Plaintiffs Pamela Ball and Charles Smalley illustrate the who, what, when, and how required of Rule 9(b).

The Complaint alleges a fee-driven, volume-based foreclosure operation franchised out of Gerald Shapiro's LOGS Group wherein the individual franchise, Shapiro & Burson through the Substitute Trustee Defendants, collects fees based on work that is never done: document review, legal analysis, and the exercise of judgment reserved only to lawyers. These omissions consist of inadequate or no document verification and/or review, non-lawyers performing legal tasks with no attorney oversight, computerized and/or automated foreclosure filings with no attorney oversight, rampant forgery and notary fraud.

The Complaint alleges with particularity, as through the examples of Plaintiffs Smalley and Ball, that Maryland residents were charged fees for legal analysis and work that was never actually done:

> To my knowledge, Shapiro & Burson's policies and practices did not require documentation from lenders proving ownership of the notes prior to commencing the foreclosure process. That was the case in Burson v. Ball, where I was told to sign an affidavit certifying that the lender owned the note without being given any documents to support that assertion.

*See* Ex. C to Compl. at ¶ 28(a).[16]

The Complaint further alleges that Defendants' foreclosure operation is based on pre-programmed data from a third-party, over which Defendants maintain absolutely no oversight or

---

[16] This practice is in contravention of Defendants' obligations under Md. Rules 14-201, *et seq.* The fee petition furnished as a part of the Audit Report represents compliance with the work done in support of the Order to Docket. If this allegation is true, the fee petitions were fraudulent.

control.  Compl. at ¶ 1.  Defendants have set in place a robotic foreclosure operation implemented by non-lawyers with very little, if any, oversight by licensed attorneys who can verify that the foreclosures comply with Maryland law. Compl. at ¶ 1.

Plaintiff Ball illustrates how this operation resulted in impermissible fees.  For instance, one of Shapiro & Burson's paralegals was asked to sign "Lost Note Affidavits," stating that even though the mortgage notes were lost, Defendants' clients had the right to foreclose—but, the paralegal was never actually given any evidence that these statements were true.  *See* Ex. C to Compl. at 28(a).  Other staff members were ordered by the firm's attorneys to do the exact same thing.  Compl. at ¶ 3.

In Plaintiff Ball's instance, which involved a Lost Note Affidavit, the affiant signing for Shapiro & Burson swore that Defendants' client was the noteholder and had the right to foreclose on the property.  Compl. at ¶ 17.  The affiant also swore that a copy of the note was attached to the Order to Docket and that the note was a true and accurate copy of the original. Compl. at ¶ 17.  However, the Complaint alleges that neither Shapiro & Burson nor the Substitute Trustee Defendants actually verified the statements listed in the affidavits accompanying the Order to Docket—or any such affidavits as required by Maryland foreclosure law.  *See* Ex. C to Compl. at 28(a).  No one should have to pay legal fees for this kind of work.

There is a complete absence of document verification that would justify the imposition of the fees assessed against Plaintiffs Smalley and Ball.  For instance, the Complaint states in relation to Plaintiff Ball's foreclosure:

> Several months later, in August of 2008, the Substitute Trustee Defendants made the court aware of the fact that the Order to Docket was defective.  In an attempt to cure their prior defect, they made the court aware that the purported noteholder was unable to find the promissory note.

Compl. at ¶ 23.

This event illustrates the Complaint's allegations that foreclosure orders are computer-generated by FANDO and the LOGS Group without any legal personnel—lawyer or supervised non-lawyer—reviewing loan files.  Compl. at ¶ 131.  These third-parties then relay specific sets of data to local law firms, such as Defendant, whose own electronic data management systems print out template foreclosure filings containing the pre-programmed data.  Compl. at ¶ 133. From there, there is no independent verification by an attorney or an attorney-supervised non-lawyer.  Compl. at ¶ 133.  There does not appear to be any verification of the data whatsoever. Compl. at ¶ 133.  Then, without attorney supervision, non-lawyers forge attorney signatures in the amount of thousands on a monthly basis.  Compl. at ¶ 133.  These fees are not reasonable and Maryland residents should not have to bear them.

The specific set of events illustrated by the stories of Pamela Ball and Charles Smalley explain how in just two circumstances this business plan resulted in the imposition of unearned or excessive legal fees and commissions against Maryland residents for years.

The Complaint also details rampant forgeries in Shapiro & Burson's legal process:

12) I personally witnessed on more than one occasion an attorney by the name of Matthew McDowell who also works for the U.S Patent and Trademark Office, come in and review and sign William Savage's name to the deeds referenced above.

13) In my estimation approximately 70% to 75% of the deeds I and others prepared in my department were signed by Matthew McDowell using William Savage's name. Consisting of over one thousand deeds prepared by the entire department and later recorded.

*See* Ex. C to Compl. at ¶¶ 12-13.

21) In addition to the deeds signed by Mr. McDowell, he also signed William Savage's name on accompanying Affidavits accompanying the deed at the time of recordation.

22) The aforesaid affidavits consisting of: Affidavit of Consideration with Attorney's Certificate, Affidavit of Non-Military Status, and Affidavit as to Total Payment.

*See* Ex. C to Compl. at ¶¶ 21-22.

16) After Mr. McDowell signed Mr. Savage's name on these deeds they were then returned to me and others in the office without Mr. Savage ever having examined the deed in question. At this time we were instructed to notarize the deeds.

17) The names of other notaries who were instructed in the same manner consist of: Sharon L. Huddleston (VA #263534), Maureen E. Bravo (VA #129034), Venetta A. Martin (VA #356730), Lisa M. Handy (VA #7332090), Dwight M. Taylor (VA #7332078), Nancy M. Dinnin (VA #7229644) and Drew W. Ernest (VA #7332086).

26) I am also aware that in the foreclosure filing department, a notary by the name of Susan Cornelius was instructed by Leanna Kennebeck, the Director of Operations at Shapiro & Burson to leave stacks of MERS Assignments on Leanna's desk to be reviewed and signed at a later time. Subsequent to Leanna signing the MERS Assignments, which occurred out of the presence of Susan, the stack documents were returned to Susan to be notarized.

*See* Ex. C to Compl. at ¶¶ 16-17, 26.

The above-referenced passages illustrate William Savage's overt acts in furtherance of the conspiracy alleged in the Complaint. As shown below, John Burson knowingly participated in overt acts in furtherance of the conspiracy as well:

23) I also on several occasions witnessed my supervisor, Gloria Faria signing John Burson's signature on affidavits and trustee's deeds. She would laugh it off and say to me "Mr. Burson has given me carte-blanche."

38

*See* Ex. C to Compl. at ¶ 23.

In addition, the Complaint's allegations pertaining to Defendant Jason Murphy, including the exhibits attached thereto and the exhibits attached to the Substitute Trustees' Motion to Dismiss, sufficiently allege his participation as a conspirator under RICO and a theory of civil conspiracy to commit fraud.

For RICO purposes, a conspiracy does not require an actual commission of a requisite predicate offense. *See United States v. Marcello*, 537 F. Supp. 1364 (E.D. La. 1982) aff'd (5th Cir. 1983) 703 F.2d 805, reh. den. (5th Cir. 1983) 707 F.2d 515 and reh. den. (5th Cir.1983) 708 F.2d 720 and cert. den. 464 U.S. 935 (1983).  In fact, no actual acts of racketeering need occur. *Id.*  There need only be an agreement by each defendant to commit at least two predicate offenses coupled with some overt act by one of the conspirators in furtherance of the conspiracy. *Id.*  Further, a RICO conspiracy does not require total fusion of defendants in all acts of racketeering, that all defendants participate in all acts, know of the entire scheme, or be acquainted with all other defendants.  *United States v. Boylan*, 898 F2d 230, (1st Cir. 1990) cert. den. 498 U.S. 849 (1990).  Rather, a RICO conspiracy only requires that component parts be linked together to afford a plausible inference that an agreement existed.  *Id.*  A conspiracy can be shown by circumstantial evidence where similarities among defendants and their activities are "nothing short of striking" and where defendants often cooperated.  *Id.*

Here, as shown above, the Complaint sufficiently alleges that the Substitute Trustee Defendants cooperated closely with one another as co-trustees.  The Complaint also alleges that they employed Shapiro & Burson and its personnel to carry out at least some of the predicate racketeering activities (i.e., using the interstate wire and mail system in furtherance of the fraud scheme (Compl. at ¶ 47)).

For the foregoing reasons, Plaintiffs have sufficiently alleged claims for fraud, conspiracy, and violations of the Maryland Consumer Protection Act.

**X.      Plaintiffs Have Stated A Claim Under The Federal Fair Debt Collection Practices Act.**

The Substitute Trustee Defendants have misrepresented the protections of the FDCPA. Their Motion states that the FDCPA prohibits only "certain specified activities." Def. Mot. to Dismiss at 30. This is blatantly false. The first line of 15 U.S.C. § 1692f, deliberately omitted by Defendants, states that the cited list was meant in no way to limit the following general prohibition: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The list cited by Defendants is merely illustrative of ways in which that general prohibition can be violated.

The Complaint is replete with allegations detailing Defendants' unfair and/or unconscionable debt collection methods. Furthermore, Plaintiffs have averred facts to support a claim that Defendants violated the following enumerated provision:

> The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1).

As such, Defendants' Motion should be denied.

**XI.     The Substitute Trustees' Immunity Defense Is Without Merit And Must Be Dismissed.**

Trustees only have immunity when appointed by the court. *See Anderson v. Joseph*, 200 Md. App. 240, 243 (Md. Ct. Spec. App. 2011) ("trustees traditionally are judicial officers ***when appointed by the court***, and as such, they are entitled to judicial immunity."). Consequently, Defendants' reliance on *D'Aoust v. Diamond*, is inapposite. 197 Md. App. 195, 215 (Md. Ct.

Spec. App. 2010).  There, the parties did not dispute whether the trustees in that case were judicial officers.

In this case, as previously shown, the Substitute Trustee Defendants were not judicially appointed.  Rather, their role was contractually created by a deed of trust.  Their appointment as trustees in this matter was done at the election of a third party with the prior written authorization of the Plaintiffs per their deeds of trust.  The Circuit Court did not appoint them.

Furthermore, Defendant Shapiro & Burson was not appointed as a trustee—it performed the legal work incident to the fraud scheme articulated in the Complaint.  Even if the Substitute Trustees could cloak themselves in qualified immunity, Shapiro & Burson cannot.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs Charles Smalley and Pamela Ball respectfully request that his Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

*/s/ Jimmy Ray Howell, Jr.*
Jimmy R. Howell (29606)
jrhowell@jrhlegalstrategies.com
Ian Stumpf (18052)
istumpf@jrhlegalstrategies.com
JR Howell & Associates
1325 G Street NW, Suite 500
Washington D.C. 20005
P: 202.552.7386
F: 202.518.2571
*Attorneys for Plaintiffs*

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2011, a copy of the foregoing was served electronically via the Court's electronic filing system on the parties listed below:

Robert A. Scott, Esq.
Glenn A. Cline, Esq.
Ballard Spahr LLP
300 East Lombard Street, 18th Floor
Baltimore, Maryland 21202
*Counsel for Defendants Shapiro & Burson LLP,*
*John Burson, and William Savage*

Bizhan Beiramee, Esq., P.C.
6663 B Old Dominion Drive, Suite 3
McLean, Virginia 22101
*Counsel for Defendants Shapiro & Burson LLP,*
*John Burson, and William Savage*

Andrew J. Morris, Esq.
Carr Maloney P.C.
2000 L Street, NW, Suite 450
Washington, D.C. 20036-4907
*Counsel for Defendant Jason Murphy*

        Respectfully submitted,

        */s/ Jimmy Ray Howell, Jr.*
        Jimmy Ray Howell, Jr.
        *One of the Attorneys for Plaintiffs*