**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **MR. CHARLES SMALLEY**, *et al*. ) | CASE NO.: 8:11-cv-00906-JFM |
| ) | |
| Plaintiffs, ) | Judge Frederick Motz |
| ) | |
| vs. ) | |
| ) | |
| **SHAPIRO & BURSON, LLP,** *et al*. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## INTRODUCTION

Defendant Jason Murphy has moved to dismiss the Complaint on numerous grounds similar to those asserted by Defendants Shapiro & Burson, John Burson, and William Savage. For the sake of brevity, Plaintiffs incorporate by reference their Brief in Opposition to the Motion to Dismiss filed by those Defendants. In this Opposition, Plaintiffs address only those issues that are unique to Defendant Murphy's Motion to Dismiss.

## STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the Court must assume that the allegations in the non-moving party's pleadings are true and must construe all facts in the light most favorable to the non-moving party. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Traditionally, a motion to dismiss under 12(b)(6), "tests the sufficiency of a complaint;… it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C.*, 980 F.2d at 952. In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that a complaint must "state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). A complaint achieves facial plausibility when it contains sufficient factual allegations supporting the reasonable inference that the defendant is

liable for the misconduct alleged. *Id.* at 556; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

Plaintiffs have sufficiently stated claims for relief and Defendant's Motion should be denied.

## LAW AND ARGUMENT

### I. Plaintiffs Have Standing To Assert Their Claims Because They Have Suffered Compensable Injuries.

Defendant Murphy's standing argument is entirely without merit. Defendant asserts that Plaintiffs lack standing because they have failed to allege pecuniary loss. This argument fails for two reasons: (1) Plaintiffs have in fact alleged pecuniary loss; and (2) not every claim asserted against Defendant requires a showing of financial detriment.

First, Plaintiffs have alleged that the fees were passed on to them. For instance, Paragraph 46 of the Complaint states:

> [T]he fees and/or commissions received by the Substitute Trustee Defendants and/or Shapiro & Burson were unearned, fraudulently obtained, and impermissibly passed on to Plaintiff Ms. Ball and each member of the class.

Compl. at ¶ 46. *See also* Compl. at ¶ 71 ("These fees were passed on to Mr. Smalley."); Compl. at ¶ 4 ("These fees were unlawfully assessed against each member of the class."); Compl. at ¶ 74 ("As a result, the fees and/or commissions received by the Substitute Trustee Defendants and/or Shapiro & Burson were unearned, fraudulently obtained, and impermissibly passed on to Plaintiff Mr. Smalley and each member of the class."); Compl. at ¶ 89(a) ("Most class members are not likely to seek redress for the ill-begotten fees assessed by Defendants, which from person to person may amount to less than $10,000.00."); Compl. at ¶ 95 ("The pattern of unlawful, fraudulent activity described above resulted in the imposition of commissions or other fees from the foreclosure sales and passed on to each Plaintiff and to each member of the class by the

Substitute Trustee Defendants and Defendant Shapiro & Burson."). As a result, Plaintiffs have more than sufficiently alleged tangible financial harm.

This exact same argument was considered and rejected by the Eastern District of California in *Walters v. Fid. Mortg. of Cal., Inc.*, where the court found RICO standing based on excessive fees charged in a foreclosure sale. 730 F. Supp. 2d 1185, 1207 (E.D. Cal. 2010). The *Walters* court stated in pertinent part:

> Notwithstanding Ocwen's assertions to the contrary, plaintiff also alleges losses that are compensable under RICO. Plaintiff asserts that defendants' acts of mail and wire fraud caused her financial losses ***in the form of excessive fees and costs***, as well as the loss of her home as a result of the foreclosure sale. These alleged injuries constitute a concrete financial loss of plaintiff's 'property,' and thus satisfy the injury requirement of RICO standing.

*Walters,* 730 F. Supp. 2d at 1207 (internal citations and quotations omitted).

In the face of the *Walters* decision, Defendant's cited authority in *Maddox v. Cohn* is completely irrelevant. 199 Md. App. 63, 71 (Md. Ct. Spec. App. 2011) cert. granted 421 Md. 192, 25 A.3d 1025 (2011). There, the Maryland Court of Special Appeals considered a challenge to the inclusion of a fee in a foreclosure advertisement, which has nothing to do with this case.[1] *Id*. The standing issues in *Maddox* came nowhere near to addressing a homeowner's challenge to sham fees assessed against them, as was considered in *Walters*, where the Eastern District of California found standing on behalf of the erstwhile homeowner.

Furthermore, Plaintiffs' common law and statutory claims give them access to punitive and non-economic damages. In the case of claims involving intentional misrepresentations, as

---

[1] The former homeowner "sets forth two reasons why the inclusion of the fee provision in the advertisement rendered the sale improper. First, she argues that including the fee was fraudulent because it had a chilling effect on prospective bidders by leading them 'to believe that they must agree to pay the stated fee in order to place a successful bid' at the auction. Second, she claims that the fee for the trustees was not authorized by the court, and thus it was 'compensation over and above that which is authorized by the debt instrument,' as well as the state and local rules governing foreclosure proceedings." *Maddox*, 199 Md. App. at 71.

3

pleaded in the Complaint, Plaintiffs are entitled to punitive damages even in the absence of actual monetary loss.  In addition, upon proof of intentional misrepresentation, a plaintiff may recover "emotional damages that are the natural and proximate result" of the defendant's conduct.  *See Kilduff v. Adams, Inc*., 593 A.2d 478, 484 (Conn. 1991); *see also Kneip v. Unitedbank-Victoria*, 734 S.W.2d 130, 136 (Tex. App. 1987) (permitting recovery in tort for emotional damages which result "directly, naturally and proximately from fraud"); *Holcombe v. Whitaker*, 294 Ala. 430, 318 So. 2d 289, 292-93 (Ala. 1975) (recovery, including emotional damages, permitted for the "ordinary, natural and proximate consequences" of willful tortious action).

Applying these principles, the District of Columbia Court of Appeals in *Osbourne v. Capital City Mortgage Corp*. permitted a plaintiff to proceed on a claim for emotional damages where intentional misrepresentation was alleged in the complaint: "Thus if the Osbournes can prove intentional misrepresentation by Capital City, as alleged in the complaint, it is not unfair to permit them to recover for any emotional harm that may have occurred as a result of Capital City's actions." 667 A.2d 1321, 1328 (D.C. 1995).

In *Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc*., a Florida court explained the rule permitting punitive damages for intentional fraud:

> If proof of intentional fraud is per se enough for punitive damages, then the failure to establish the precise monetary amount of the actual loss caused by the fraud does not affect the entitlement to punitive damages. It may have an effect on the amount of punitive damages but not entitlement.

955 So. 2d 1124, 1139 (Fla. Ct. App. 2007).

Moreover, the elements of mail and wire fraud under RICO are not as stringent as intentional fraud.  For instance, the Second Circuit explained in *United States v. Starr*,

4

> [C]ritical to a showing of a scheme to defraud is proof that defendants possessed a fraudulent intent. However, the government is not required to prove that an intended victim was actually defrauded to establish a violation by the defendants. ***No actual pecuniary injury, therefore, need result to the victim of the fraud***.

816 F.2d 94, 98 (2d Cir. 1987) (emphasis added).

As such, Plaintiffs have standing to bring their asserted claims.

## II.     Plaintiffs Have More Than Adequately Pleaded Their RICO Claims Against Defendant Murphy.

### A. Plaintiffs Have Stated The Elements Of A Violation Of 18 U.S.C. § 1962(a).

The RICO statute states in pertinent part:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code [18 USCS § 2], to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

18 U.S.C. § 1962(a).

Defendant's Motion argues that Plaintiffs' claims fail because the Complaint does not assert that Murphy received proceeds from the activities described therein and because the Complaint fails to allege that Murphy invested any proceeds in Shapiro & Burson. Not only are these statements untrue, but, even if they were, they are not enough to disclaim liability under this portion of the statute.

To state a claim under the RICO statute, "plaintiffs would have to show *that at least one of the defendants* received income from a pattern of racketeering activity and used at least some of it, or the proceeds of it, in acquiring, establishing or operating an enterprise engaged in interstate commerce." *Kirschner v. Cable/Tel Corp.*, 576 F. Supp. 234, 242 (E.D. Pa. 1983) (emphasis added). As such, it is unnecessary to show that Murphy himself received the funds that were later re-invested in the operation of the enterprise.[2]

Furthermore, though Murphy challenges the sufficiency of Plaintiffs' 1962(a) allegations, Plaintiffs' averments are more detailed than those upheld by the Fourth Circuit in *Busby v. Crown Supply*, which considered a 12(b)(6) challenge to a claim for 1962(a) liability. 896 F.2d 833, 839 (4th Cir. 1990).

For instance, in Count II, Plaintiffs allege "each Defendant received income via the ill-begotten fees from participating in the pattern of racketeering activity described in this lawsuit." Compl. at ¶ 105. This allegation is supported by the audit reports submitted to this Court in the Motion to Dismiss filed by Defendants Shapiro & Burson, William Savage, and John Burson:

1. The Trustees are charged with the proceeds of sale as reported.
2. The usual costs and expenses are allowed, together with a reasonable attorney's fee.

*See* Ex. 4 to Mot. to Dismiss by Def. Shapiro & Burson, *et al*.

The Complaint goes on to allege specifically how this income was re-invested: "Defendant Shapiro & Burson LLP used and/or invested its income to create an elaborate pre-sale and post-sale robo-signing operation that defrauded thousands of Maryland homeowners into paying unearned legal fees and commissions from unlawful foreclosure sales." Compl. at ¶

---

[2] It should be noted that the Fourth Circuit has explicitly rejected the independent "investment injury rule" adopted by some circuits. *Busby v. Crown Supply*, 896 F.2d 833, 839 (4th Cir. 1990).

106.³  In addition, Plaintiffs alleged that "Each of the Substitute Trustee Defendants re-invested their income through their affiliation with Defendant Shapiro & Burson LLP."  Compl. at ¶ 106. "Each Defendant used and/or invested or re-invested the income or the proceeds from the income described in the aforementioned allegation for the purpose of operating the described enterprise." Compl. at ¶ 106.

A comparison of the allegations that the Fourth Circuit upheld in *Busby* illustrates the sufficiency of Plaintiffs' allegations:

> For example, in Count I, plaintiff, after alleging the false price book and rebate schemes, avers that "[through] the use of the fraudulent schemes . . . defendant Crown was able to retain funds which rightfully were payable to the plaintiff Busby and the Class Plaintiffs as commissions based upon the true cost of the goods they sold . . . [and] defendant Crown was able to retain those funds and use those funds in its operations described as that term is used in 18 U.S.C. § 1962(a)." As a further allegation, the complaint recites that "plaintiff Busby and the Class Plaintiffs were injured in their business and property by reason of the operation of Crown in the manner described above."
>
> Similarly, in Count II of the complaint, plaintiff alleges that "[through] the collection of receipts through its rebate program . . . defendant Hammermill has used and continues to use the proceeds and income derived directly and indirectly from the patterns of racketeering activity by all defendants to maintain its ownership of Crown . . ., and to establish and operate the CDA Division, all in violation of 18 U.S.C. § 1962(a)." Immediately following, plaintiff alleges that "plaintiff Busby and the Class plaintiffs have been injured in their business and property by reason of defendant Hammermill's violation of 18 U.S.C. § 1962 by depriving them of commissions owing to them, as described above."

*Busby v. Crown Supply*, 896 F.2d 833, 840 (4th Cir. 1990).

---

³Although Plaintiffs have asserted in their Opposition Brief to the Motion to Dismiss filed by Shapiro & Burson *et al*. that they have alleged an enterprise theory of association-in-fact, Defendant Murphy's characterization of the enterprise as solely Shapiro & Burson is not fatal to Plaintiffs' claim under 1962(a).  Under this provision, the "enterprise" and the "persons" need not be separate entities.  *See Busby v. Crown Supply*, 896 F.2d 833, 841 (4th Cir. 1990) ("Thus, we are now persuaded that for a violation of § 1962(a), the offender and the enterprise need not be separate. They may be identical.").

In light of the foregoing, Plaintiffs have more than adequately made their showing to demonstrate liability under 18 U.S.C. § 1962(a).

### B. Plaintiffs Have Stated The Elements Of A Violation Of 18 U.S.C. § 1962(b).

The RICO statute states in pertinent part:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b).

Defendant argues that he cannot be held liable under this provision because Plaintiffs failed to allege that Murphy himself controlled the enterprise at issue. Yet again, this is a misinterpretation of the law.

In order to recover under section 1962(b), plaintiffs would have to show *that at least one of the defendants*, through a pattern of racketeering activity, acquired or maintained an interest in the enterprise.

*Kirschner v. Cable/Tel Corp.*, 576 F. Supp. 234, 242-243 (E.D. Pa. 1983).

Nevertheless, the Complaint does spell out how Defendant Murphy's pattern of racketeering activities allowed him to maintain, even indirectly, an interest in the enterprise alleged. *See* Compl. at ¶ 107. These allegations also explain Defendant Murphy's "control" of the enterprise. For 1962(b) purposes, the term "interest" is a proprietary one and the term "control" is in the "nature of the control one gains through the acquisition of sufficient stock to affect the composition of a board of directors." *Moffatt, Enterprises, Inc. v. Borden*, Inc., 763 F. Supp. 143, 147 (W.D. Pa. 1990). The proprietary interest can be attained even indirectly. *See* 18 U.S.C. § 1962(b).

Though only one element is needed, Defendant Murphy acquired both an "interest" and "control" in the enterprise. As shown in the previous section discussing liability under 1962(a),

Defendant Murphy acquired significant sums of money through maintaining his interest in the enterprise as not only an attorney at Shapiro & Burson, but also as a Substitute Trustee, a completely separate role from his duty as a lawyer, which he undertook in his individual capacity. *See, e.g.* Ex. 4 to Mot. to Dismiss by Def. Shapiro & Burson, *et al*. These allegations and the evidence related thereto shows how Murphy's maintenance of his interest in the enterprise caused direct harm to the Plaintiffs—separate and apart from the predicate acts described in Count II.[4] Further, as a co-trustee, he possessed the level of control in the enterprise described in *Moffatt, Enterprises, supra*. Each sale reaped additional fees and commissions assessed back to Maryland residents, as alleged in the Complaint. As all of these fees were excessive or entirely unearned, Defendant Murphy's role as a substitute trustee had a direct impact on Plaintiffs Smalley and Ball. The fees he received enabled him to continue with the operation.

Furthermore, under *Kirschner*, the Complaint and Exhibit C to the original Complaint (Dkt #1), detail just how William Savage, John Burson, and Shapiro & Burson LLP maintained an interest in the enterprise, as alleged, through a pattern of racketeering activity and/or unlawful debt collection practices as prohibited by 18 U.S.C. 1962(b).

Consequently, Defendant Murphy's arguments must be rejected.

### C. Plaintiffs Have Stated The Elements Of A Violation Of 18 U.S.C. § 1962(c).

The RICO statute states in pertinent part:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

---

[4] However, as explained in *Busby* the Fourth Circuit would not require an injury separate from the predicate acts.

18 U.S.C. § 1962(c).

In the face of Plaintiffs' allegations, Defendant asserts that Plaintiffs have failed to allege that Murphy conducted an enterprise through a pattern of racketeering activity and that Plaintiffs have not alleged sufficient racketeering activity.

With regard to the RICO claim under section 1962(c), five elements need be shown. They are as follows:

> (1) existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that he participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and (5) that he participated through a pattern of racketeering activity, i.e., through the commission of at least two racketeering acts.

*United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir. 1982); *Eaby v. Richmond*, 561 F. Supp. 131, 134 (E.D. Pa. 1983); *Kranzdorf v. Green*, 582 F. Supp. 335 (E.D. Pa. 1983).

**(1) Plaintiffs Have Alleged The Existence Of An Enterprise Engaged In Interstate Commerce.**

Plaintiffs have shown the existence of a group of "persons" associated together for a common purpose of engaging in a course of conduct.[5] *United States v. Turkette*, 452 U.S. 576, 583 (1981). The statute defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Plaintiffs' association-in-fact theory is a viable enterprise concept. *United States v. Thevis*, 665 F.2d 616, 625-26 (5th Cir. Unit B), cert. denied, 456 U.S. 1008, 102 S. Ct. 2300, 73 L. Ed. 2d 1303 (1982); *United States v. Navarro-Ordas*, 770 F.2d 959, 969 n. 19 (11th Cir. 1985) (group of corporations may constitute association-in-fact), cert. denied, 475 U.S. 1016, 106 S.

---

[5] 18 U.S.C. § 1961(3) (defining "person" as "any individual or entity capable of holding a legal or beneficial interest in property").

10

Ct. 1200, 89 L. Ed. 2d 313 (1986); *United States v. Aimone*, 715 F.2d 822, 828 (3d Cir. 1983) (individuals and corporations may constitute association-in-fact), cert. denied, 468 U.S. 1217, 104 S. Ct. 3585, 82 L. Ed. 2d 883 (1984); *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1285 (7th Cir. 1983) ("enterprise" includes all enumerated entities and any combination of them).

Applying the association-in-fact doctrine, the Eleventh Circuit upheld convictions under the RICO statute: "the enterprise consisted of two or three leaders and several core individuals who were associated to effectuate the importation of marijuana into the United States." *United States v. Young*, 906 F.2d 615, 619 (11th Cir. 1990).

In addition, the District of Columbia Circuit described allegations that would sufficiently describe an association-in-fact enterprise:

> The indictment charged that Perholtz, along with other individuals and corporations, formed an enterprise, i.e., an association-in-fact. The indictment further alleged that Perholtz participated in the conduct of the enterprise by his various actions in furtherance of its common objectives.

*United States v. Perholtz*, 842 F.2d 343, 353 (D.C. Cir. 1988)

As in *Young* and *Perholtz*, the Complaint sufficiently describes an association-in-fact enterprise, which is distinct from the persons that comprise it:

> Each of the Substitute Trustees are associated with each other and are associated both individually and collectively with Defendant Shapiro & Burson. Defendant Shapiro & Burson is a Virginia Limited Liability Partnership through which all of the Substitute Trustee Defendants are associated with one another. The Substitute Trustee Defendants are separately associated with one another for the purposes of their activities as substitute trustees. This enterprise has existed during the time period relevant to the class and the allegations listed in this lawsuit.

Compl. at ¶ 102.

Further, as in *Perholtz*, the Complaint sufficiently alleges that Defendant's actions furthered the enterprise's common objectives.

11

**(2) Defendant Murphy Was Associated With The Enterprise In Which He Actively Participated.**

As already shown, Defendant Murphy served as a Substitute Trustee and, as such, participated in the fraud scheme alleged in the Complaint. The Complaint's fraud scheme details a pattern of racketeering activity.[6] For instance, the Complaint plainly alleges:

---

[6] The RICO statute defines "racketeering activity" as follows: "(1) 'racketeering activity' means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act [21 USCS § 802]), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 [18 USCS § 201] (relating to bribery), section 224 [18 USCS § 224] (relating to sports bribery), sections 471, 472, and 473 [18 USCS §§ 471, 472, and 473] (relating to counterfeiting), section 659 [18 USCS § 659] (relating to theft from interstate shipment) if the act indictable under section 659 [18 USCS § 659] is felonious, section 664 [18 USCS § 664] (relating to embezzlement from pension and welfare funds), sections 891-894 [18 USCS §§ 891 through 894] (relating to extortionate credit transactions), section 1028 [18 USCS § 1028] (relating to fraud and related activity in connection with identification documents), section 1029 [18 USCS § 1029] (relating to fraud and related activity in connection with access devices), section 1084 [18 USCS § 1084] (relating to the transmission of gambling information), section 1341 [18 USCS § 1341] (relating to mail fraud), section 1343 [18 USCS § 1343] (relating to wire fraud), section 1344 [18 USCS § 1344] (relating to financial institution fraud), section 1425 [18 USCS § 1425] (relating to the procurement of citizenship or nationalization unlawfully), section 1426 [18 USCS § 1426] (relating to the reproduction of naturalization or citizenship papers), section 1427 [18 USCS § 1427] (relating to the sale of naturalization or citizenship papers), sections 1461-1465 [18 USCS §§ 1461 through 1465] (relating to obscene matter), section 1503 [18 USCS § 1503] (relating to obstruction of justice), section 1510 [18 USCS § 1510] (relating to obstruction of criminal investigations), section 1511 [18 USCS § 1511] (relating to the obstruction of State or local law enforcement), section 1512 [18 USCS § 1512] (relating to tampering with a witness, victim, or an informant), section 1513 [18 USCS § 1513] (relating to retaliating against a witness, victim, or an informant), section 1542 [18 USCS § 1542] (relating to false statement in application and use of passport), section 1543 [18 USCS § 1543] (relating to forgery or false use of passport), section 1544 [18 USCS § 1544] (relating to misuse of passport), section 1546 [18 USCS § 1546] (relating to fraud and misuse of visas, permits, and other documents), sections 1581-1592 [18 USCS §§ 1581-1592] (relating to peonage, slavery, and trafficking in persons)[.], section 1951 [18 USCS § 1951] (relating to interference with commerce, robbery, or extortion), section 1952 [18 USCS § 1952] (relating to racketeering), section 1953 [18 USCS § 1953] (relating to interstate transportation of wagering paraphernalia), section 1954 [18 USCS § 1954] (relating to unlawful welfare fund payments), section 1955 [18 USCS § 1955] (relating to the prohibition of illegal gambling businesses), section 1956 [18 USCS § 1956] (relating to the laundering of monetary instruments), section 1957 [18 USCS § 1957] (relating to engaging in monetary

      Defendants made these misrepresentations for the purpose of obtaining unearned fees from each Plaintiff and each member of the class and for the purpose of obtaining commissions based on fraudulently conducted foreclosure sales, which such illegitimate commissions were passed on to each Plaintiff and each member of the class.

Compl. at ¶ 95.

      In this case, it is plainly apparent that certain persons, distinct from the enterprise, separately engaged in predicate acts under the statute. As one of many examples, the Complaint

---

transactions in property derived from specified unlawful activity), section 1958 [18 USCS § 1958] (relating to use of interstate commerce facilities in the commission of murder-for-hire), section 1960 [18 USCS § 1960] (relating to illegal money transmitters), sections 2251, 2251A, 2252, and 2260 [18 USCS §§ 2251, 2251A, 2252, and 2260] (relating to sexual exploitation of children), sections 2312 and 2313 [18 USCS §§ 2312 and 2313] (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 [18 USCS §§ 2314 and 2315] (relating to interstate transportation of stolen property), section 2318 [18 USCS § 2318] (relating to trafficking in counterfeit labels for phone records, computer programs or computer program documentation or packaging and copies of motion pictures or other audiovisual works), section 2319 [18 USCS § 2319] (relating to criminal infringement of a copyright), section 2319A [18 USCS § 2319A] (relating to unauthorized fixation of and trafficking in sound recordings and music videos of live musical performances), section 2320 [18 USCS § 2320] (relating to trafficking in goods or services bearing counterfeit marks), section 2321 [18 USCS § 2321] (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2341-2346 [18 USCS §§ 2431-2346] (relating to trafficking in contraband cigarettes), sections 2421-24 [18 USCS §§ 2421-2424] (relating to white slave traffic), sections 175-178 [18 USCS §§ 175-178] (relating to biological weapons), sections 229-229F [18 USCS §§ 229-229F] (relating to chemical weapons), section 831 [18 USCS § 831] (relating to nuclear materials), (C) an act which is indictable under title 29, United States Code, section 186 [18 USCS § 186] (dealing with restrictions on payments and loans to labor organizations) or section 501(c) [18 USCS § 501(c)] (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title [18 USCS § 157]), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act [21 USCS § 802]), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 [8 USCS § 1324] (relating to bringing in and harboring certain aliens), section 277 [8 USCS § 1327] (relating to aiding or assisting certain aliens to enter the United States), or section 278 [8 USCS § 1328] (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B) [18 USCS § 2332b(g)(5)(B)]." 18 U.S.C. § 1961(1).

and its attachments explain that the Substitute Trustee Defendants, including Defendant Murphy, submitted sham fee requests on behalf of Defendant Shapiro & Burson. In addition, Exhibit C to the original Complaint and the Amended Complaint show that certain Substitute Trustee Defendants attested to reviewing documents—which never took place—and then sought fees and commissions based on representations that such work was actually done.

Plaintiffs have pleaded the constitute elements of a 1962(c) violation. Defendant's arguments must be rejected.

### D. Plaintiffs Have Stated The Elements Of A Violation Of 18 U.S.C. § 1962(d).

The RICO statute states in pertinent part:

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(d).

In analyzing this portion of the statute, the Seventh Circuit has said:

Congress did not explicitly impose through the language of the statute any requirement of agreement personally to commit two predicate acts. Second, the addition of a requirement of an agreement personally to commit the acts would frustrate the Congressional policy of broadening the scope of remedies available to fight organized crime. Finally, RICO was enacted against the backdrop of hornbook conspiracy law.

*United States v. Neapolitan*, 791 F.2d 489, 496 (7th Cir. 1986).

"Under classic conspiracy law, agreeing to the commission of the conspiracy's illegitimate objectives constitutes the crime. The goal of a RICO conspiracy as defined by section 1962(d), is a violation of RICO. The defendant need only agree to a single violation of RICO; he need not agree personally to violate the statute." *Id*.

The seminal case defining what constitutes an agreement to conspire is the Fifth Circuit's decision in *United States v. Elliott*, where the court stated:

14

> [T]o be convicted as a member of an enterprise conspiracy, an individual, by his words or actions, must have objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes.

571 F.2d 880, 903 (5th Cir. Ga. 1978).

As alleged in the Complaint and as shown further herein, Defendant Murphy has, by his "words or actions" shown his agreement to participate, directly or indirectly, in the enterprise's affairs through at least two predicate crimes. For illustrative purposes, this Brief focuses on the predicate crimes of mail and wire fraud, though the Complaint alleges additional predicate acts of racketeering activity.

In further refining the elements of proof necessary to establish an agreement by "words or actions" under *Elliott*, the Eleventh Circuit in *United States v. Young*, explained as follows:

> An agreement on an overall objective can be proved by either an explicit agreement to participate in the enterprise or ***circumstantial evidence*** showing that each defendant ***must necessarily have known*** that others were also conspiring to participate in the same enterprise through a pattern of racketeering activities.

906 F.2d 615, 619 (11th Cir. Fla. 1990) (internal citations and quotations omitted).

Under the *Young* standard, there are sufficient averments alleging widespread corruption within the conduct of the Substitute Trustees and the practices of Defendant Shapiro & Burson that Defendant Murphy "must necessarily have known" that his co-trustees and Shapiro & Burson were also conspiring to participate in the enterprise.

For instance, the mail fraud statute states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or ***for obtaining money or property by means of false or fraudulent pretenses***, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, ***places in any post office or authorized depository for mail matter***, any matter or thing whatever to

15

> be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, ***or takes or receives therefrom***, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $ 1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1341.

> The wire fraud statute states:
>
> Whoever, having devised or intending to devise any scheme or artifice to defraud, or ***for obtaining money or property by means of false or fraudulent pretenses***, representations, or promises, ***transmits*** or causes to be transmitted b***y means of wire***, radio, or television communication in interstate or foreign commerce, ***any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme*** or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $ 1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1343.

The Substitute Trustees operated out of Virginia and submitted their requests for fees and commissions into Maryland through the mails, as defined in the mail fraud statute. *See* Compl. at ¶ 47 ("In furtherance of Defendants' scheme to acquire fees through Ms. Ball's foreclosure based on fraudulent documents, Defendants used the U.S. mail system, e-mail, facsimile, landline telephones, and cellular phones"); *see also* Compl. at ¶¶ 21, 56, 63, 67, 68, 76. In addition, much of their scheme was carried out through the interstate wire system. *See* Compl. at

¶ 47, 76, 131, 133.  Furthermore, given the sheer number of victims as detailed in Exhibit C to the original Complaint and the presence of Defendant Murphy's signature on so many documents submitted to Maryland's courts, the *Young* standard concerning conspiracy agreements is far surpassed here.

Even in the absence of the *Young* standard, the Complaint alleges that Defendant Murphy overtly agreed to engage in the conspiracy alleged therein, along with the details pertaining to that agreement.  *See* Compl. at ¶ 110, 112, 119.  Further, the volume of documents on which he signed off and submitted to Maryland courts requesting sham fees proves the agreement to participate by his "words or actions" under *Elliott*, *supra*.

Consequently, Defendant Murphy's argument against 1962(d) liability necessarily fails.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs Charles Smalley and Pamela Ball respectfully request that his Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

*/s/ Jimmy Ray Howell, Jr.*
Jimmy R. Howell (29606)
jrhowell@jrhlegalstrategies.com
Ian Stumpf (18052)
istumpf@jrhlegalstrategies.com
JR Howell & Associates
1325 G Street NW, Suite 500
Washington D.C. 20005
P: 202.552.7386
F: 202.518.2571
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on December 7, 2011, a copy of the foregoing was served electronically via the Court's electronic filing system on the parties listed below:

Robert A. Scott, Esq.
Glenn A. Cline, Esq.
Ballard Spahr LLP
300 East Lombard Street, 18th Floor
Baltimore, Maryland 21202
*Counsel for Defendants Shapiro & Burson LLP,*
*John Burson, and William Savage*

Bizhan Beiramee, Esq., P.C.
6663 B Old Dominion Drive, Suite 3
McLean, Virginia 22101
*Counsel for Defendants Shapiro & Burson LLP,*
*John Burson, and William Savage*

Andrew J. Morris, Esq.
Carr Maloney P.C.
2000 L Street, NW, Suite 450
Washington, D.C. 20036-4907
*Counsel for Defendant Jason Murphy*

                Respectfully submitted,

                */s/ Jimmy Ray Howell, Jr.*
                Jimmy Ray Howell, Jr.
                *One of the Attorneys for Plaintiffs*